[No. 6696. Decided June 5, 1907.]

## THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM GOHL, *Appellant.*[1]

WEAPONS—RIGHT TO BEAR ARMS—STATUTES—VALIDITY—CONSTITU-TIONAL LAW. Bal. Code, § 7085, prohibiting the organizing, maintaining or employing of an armed body of men, does not violate Const., art. 1, § 24, guaranteeing the right of an individual citizen to bear arms in defense of himself or the state.

JURORS—BIAS—DISCRETION OF COURT. A juror will not be found to be disqualified by actual bias, as defined by Bal. Code, § 4983, by reason of answers to questions based on assumption of facts not supported in the record, where he had no knowledge of the case and

[1]Reported in 90 Pac. 259.

no opinion as to the guilt or innocence of the accused and, considering his examination as a whole, the trial judge could not be said to have abused the discretion reposed in him by such statute.

CRIMINAL LAW—TRIAL—ORDER OF PROOF—DISCRETION. The order of admitting proof, before establishment of the *corpus delicti*, is within the discretion of the trial court.

WEAPONS—EMPLOYING ARMED FORCE—WHAT.CONSTITUTES. One is guilty of violating the statute prohibiting the organizing, maintaining or "employing" of an armed body of men, where he caused them to assemble and took them in a launch for the purpose of intimidating the master of a schooner and thereby removing a part of the crew; it being sufficient if he "employed" the men in the sense of making use of them for a specific purpose, although he did not "hire" them.

SAME—QUESTION. Upon a conflict in the testimony as to whether defendant employed men, whether they were armed, and as to their mission, the questions are for the jury.

CRIMINAL LAW—APPEAL—REVIEW. A general exception to an instruction in a criminal case containing several propositions is insufficient if the instruction is in part correct.

SAME—TRIAL—INSTRUCTIONS—COMMENT ON FACTS. An instruction defining what would be employing an armed body of men, and authorizing the jury to find the defendant guilty if they believed that he committed specified acts constituting the offense within the definition, is not objectionable as a comment on the facts.

SAME. An instruction stating the evidence which had been introduced by the parties in support of their claims is a comment on the facts, and reversible error, if prejudicial.

SAME—APPEAL—HARMLESS ERROR. Where in a criminal trial, the judge commented on the facts by stating that certain evidence had been produced to sustain certain claims, it sufficiently appears to be error without prejudice when such facts had been testified to by the appellant and other witnesses and were uncontradicted.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered November 12, 1906, upon a trial and conviction of the crime of organizing, maintaining and employing an armed body of men. Affirmed.

*Marquis & Shields*, for appellant.

*E. E. Boner* and *W. I. Agnew*, for respondent.

RUDKIN, J.—The appellant was convicted of the crime of organizing, maintaining and employing an armed body of men, in violation of Bal. Code, § 7085 (P. C. § 1967), and from the judgment and sentence of the court, the present appeal is prosecuted.

The trial court overruled a demurrer to the information, and upon this ruling the first assignment of error is predicated. The only question raised by the demurrer is the validity of the act under which the information was filed, the appellant contending that it is violative of section 24 of article one of the constitution, which declares that "The right of the individual citizen to bear arms in defense of himself or the state shall not be impaired." A constitutional guaranty of certain rights to the individual citizen does not place such rights entirely beyond the police power of the state. The freedom of speech and of the press guaranteed by the constitution of the United States and the constitutions of the several states has never been construed to carry with it an unbridled license to libel and defame. Nearly all the states have enacted laws prohibiting the carrying of concealed weapons, and the validity of such laws has often been assailed because denying to the citizen the right to bear arms, but we are not aware that such a contention has ever prevailed, except in the courts of the state of Kentucky. Besides, the constitutional provision quoted does not stand alone. It is followed by the express provision that it shall not be "construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men,"—the exact language of the act under which the information was filed. Counsel argue that the act is too sweeping in its terms, that it forbids the organization, maintenance or employment of an armed body of men *for any purpose whatever*, that it exempts no military organization, that high school cadets cannot organize for the purpose of drill, that the sheriff cannot organize a posse, etc. It will be time enough to consider these questions. when they

arise, but we might suggest at this time that the statute has
no application to bodies of men armed by the state or by its
authority.  We are satisfied that the statute is free from con-
stitutional objection, and the demurrer was properly over-
ruled.

The denial of a challenge for cause interposed to the juror
Coats is the next error assigned.  We will say, in passing, that
this juror was afterwards excused by the appellant on per-
emptory challenge, and did not sit in the case, but inasmuch
as the appellant exhausted all his peremptory challenges,
we will assume that the question of the juror's qualification
is properly before us.  Our attention is directed to the an-
swers given to some eight or ten questions propounded to
this juror by the appellant, and from these answers it is ar-
gued that the juror was not qualified.  The questions thus
propounded were based largely on assumption and facts
which find no support in the record before us, and the entire
testimony of the juror must be considered in this connection.
He had no knowledge of the facts in the case, no opinion
as to the guilt or innocence of the accused, and it must be
conceded that he was in all respects a qualified juror, unless
disqualified by actual bias.  Actual bias is defined by our
statute as, "the existence of a state of mind on the part of
the juror in reference to the action, or to either party, which
satisfies the trier, in the exercise of a sound discretion, that
he cannot try the issue impartially and without prejudice to
the substantial rights of the party challenging."  Bal. Code,
§ 4983 (P. C. § 597).  Considering the examination of the
juror as a whole, we cannot say that the trial judge who heard
his testimony and observed his demeanor abused the discretion
vested in him by law.

The third and fourth assignments are, that the court erred
in admitting any testimony under the information, and in
admitting the testimony of the witness Hansen as to happen-
ings on the trip down the bay before the *corpus delicti* was

proved. The former objection has already been considered under the first assignment of error, and as to the latter it is only necessary to say that the order of proof rests in the sound discretion of the trial court.

The next assignment is that the court erred in refusing to direct a verdict of acquittal at the close of the state's case. In support of this motion the appellant contends that the proof failed to show that he either organized, maintained or employed the armed body of men in question. For the purposes of this appeal, it may be conceded that he neither organized nor maintained the men; and if the word "employ" in the statute is used in the sense of "to hire"—in other words, if it was incumbent on the state to show that the relation of master and servant existed between the appellant and the armed men—the state has failed in its proof. But is the meaning of the word "employ" thus restricted? The act under which the information was filed recites that the state has provided for and maintains an efficient military and police force, ample for the protection of her citizens in their persons and property, and then proceeds to declare that it shall be unlawful for any person, corporation, or association of persons, or agents of any person, or member, agent or officer of any corporation or association of persons, to organize, maintain or employ an armed body of men in this state for any purpose whatever. Armed bodies of men are a menace to the public, their mere presence is fraught with danger, and the state has wisely reserved to itself the right to organize, maintain and employ them. If we assume that the appellant caused this armed body of men to assemble, and took them down the bay in a launch for the purpose of intimidating the master of the sailing schooner Fearless, and thereby removing a part of the crew from such schooner, as charged in the information and contended for by the state, his act falls clearly within the mischief against which the statute is directed, and in our opinion falls within the prohibition of the statute it-

self.  Webster thus defines the word "employ":  "To use;
to have in service; to cause to be engaged in doing something;
to make use of as an instrument, a means, a material, etc.,
for a specific purpose." We think this is the sense in which
the term *employ* is used in this statute, and if the appellant
made use of an armed body of men as an instrument or agency
to accomplish some specific purpose, he *employed* them within
the meaning of the act.  *Mousseau v. Sioux City*, 113 Iowa,
246, 84 N. W. 1027.  The testimony is extremely conflicting
on the question whether the appellant employed the men,
whether the men were armed, and what their mission was.
Under this state of the testimony all these questions were for
the jury.

The second instruction of the court was as follows:

"If you believe beyond a reasonable doubt that the de-
fendant on the second day of June last and within this
county and state, caused to be assembled together a body of
men for the purpose of going to the schooner Fearless then
situated within this county, and procured a gasoline launch
for the purpose of conveying that body of men to the
schooner, and that he assembled them under an understand-
ing that they were to be armed with fire arms, and proceed
to the schooner for the purpose of intimidating the captain
or master of the schooner, and thereby remove the cook or
any other member of the crew of the said schooner, then that
would constitute an organizing, maintaining and employing
an armed body of men contrary to the statute and the de-
fendant would be guilty, and you should so find.  The word
employ as used in the statute does not mean to hire, but it
means to use, whether under hire or not.  In relation to the
arming of the men you are instructed that it would be im-
material whether or not all the men in the party were armed.
It would be sufficient so far 'as the arming is concerned if
any considerable number of them were armed, and their pur-
pose was unlawful, and the others were aiding and abetting
those that were armed."

. The only exception to this instruction is in the following
words: "Excepted to by defendant.  Exception allowed."

The instruction contains several distinct propositions. It re-cites the facts which, in the opinion of the court, would war-rant a verdict of guilty. It defines the term "employ," and the term "armed." We are of opinion that the instruction correctly defined the term "employ" and the term "armed," and therefore the exception is not sufficient to enable this court to review the charge as a whole. In any event, we do not think that the charge is a comment on the facts, and this is the burden of the appellant's argument against it.

The fourth instruction, which was excepted to, merely sets forth the contentions of the respective parties as to certain facts, but does not comment on the facts, as claimed. The instruction perhaps states some abstract propositions which have no direct or material bearing on the case, but we fail to see how the appellant could be prejudiced thereby.

The fifth and sixth instructions are as follows:

"Evidence has been offered by the state for the purpose of proving to you that these men when they went down on the launch to the schooner were armed with fire arms.

"It is admitted by the defendant that some of the men in the party had fire arms in their possession. It is contended, however, by the defendant that he did not know there were fire arms in possession of any of the men in the party until after they had started down the river on the launch, and that, when he discovered a gun in the possession of one of the men he took it away from him, and put it out of his reach. He also contends that, when he discovered another gun in the possession of another of the men of the party, he requested the captain of the launch to take that second gun away from the man in whose possession it was, and that the captain of the launch did so, and put that gun also beyond the reach of any of the party. Now the evidence in relation to these two contentions on the part of the state and the defendant is all before you, and it is for you to determine from the testimony of the witnesses and all of the circumstances surrounding the case which of these contentions is true. There has been evi-dence offered to you for the purpose of showing that there was shooting of the fire arms between the men on board the schooner and those on board the launch, each contending that

the other shot first. It is admitted by both parties that shooting between them did occur, but each contends that the other shot first and that they then fired in response. The evidence on this point is all before you and it is for you to determine which is correct, and if after considering all of the evidence in the case, both for the state and for the defendant, not only this to which I have particularly called your attention but also all the other evidence in the case, you then believe beyond a reasonable doubt that the defendant is guilty, you should so find, if you have a reasonable doubt you should acquit."

In these instructions the court manifestly does comment on the facts, but erroneous instructions do not necessitate a reversal, unless they tend in some manner to prejudice a party's cause before the jury. Prejudice will be presumed from an erroneous charge, and the burden is upon the adverse party to show that no prejudice could or did in fact result, but we think a want of prejudice clearly appears from the record in this case. The appellant and all his witnesses testified that some of the men in the party had firearms in their possession, and that shooting between the parties in the sailing vessel and in the launch did in fact occur. These facts were reiterated by many witnesses and controverted by none. Under such circumstances, we fail to see how the appellant could be prejudiced by a mere statement of such uncontroverted facts by the court. Such comment as this should be scrupuously avoided by trial judges, but an appellate court cannot reverse a judgment for error without prejudice.

We have examined the other errors assigned, but find no reversible error, either in the charge of the court, in the refusal to charge as requested, or in the refusal of a new trial. The evidence before the jury was legally sufficient to sustain their verdict, and finding no prejudicial error in the conduct of the trial, the judgment must be affirmed, and it is so ordered.

HADLEY, C. J., ROOT, MOUNT, DUNBAR, and CROW, JJ., concur.