919 P.2d 1218 (1996)
129 Wash.2d 583
The CITY OF SEATTLE, Petitioner,
v.
Alberto MONTANA, Respondent.
The CITY OF SEATTLE, Petitioner,
v.
Henry McCULLOUGH, Respondent.
No. 63056-9.
Supreme Court of Washington, En Banc.
Argued September 28, 1995.
Decided August 1, 1996.
*1220 Mark Sidran, Seattle City Atty., and Margaret Boyle, Asst. City Atty., Seattle, for Petitioner.
Seattle-King County Public Defender, Miriam Schwartz, Neil M. Fox, Seattle, for Respondents.
*1219 TALMADGE, Justice.
Alberto Montana was arrested for drug traffic loitering, and a paring knife with a three-inch blade was found concealed on his person. Henry McCullough was arrested for theft. A knife with a long blade (six to nine inches) used for filleting fish was found in a sheath under his shirt. Both defendants were convicted in Seattle Municipal Court under Seattle Municipal Code (SMC) 12A.14.080, which prohibits carrying a dangerous knife in Seattle. The King County Superior Court ruled SMC 12A.14.080 violated the right to bear arms in art. I, § 24 of the Washington Constitution, and reversed the convictions. Art. I, § 24 of the Washington Constitution, however, is not absolute and permits reasonable regulation of arms. We find SMC 12A.14.080 is a reasonable arms regulation and exercise of police power that is neither vague nor overbroad. Accordingly, we reverse the judgment of the King County Superior Court and reinstate the conviction of defendant Montana and remand defendant McCullough's case to the trial court for further proceedings.

ISSUES
1. Does SMC 12A.14.080 violate the right to bear arms in art. I, § 24 of the Washington Constitution?
2. Is SMC 12A.14.080 unconstitutionally vague or overbroad?

FACTS
In 1990, Seattle police officers arrested defendant Alberto Montana on a Seattle street. In his inside breast pocket, the officers found a small, straight-edged knife, with a fixed blade about three inches long. Montana was charged in Seattle Municipal Court with drug traffic loitering, and with unlawful use of weapons (UUW) under SMC 12A.14.080 and 12A.14.010. The jury convicted him only on the UUW charge, and he appealed.
In 1991, two security guards detained defendant Henry McCullough after seeing him steal a watch inside a Seattle hardware store. In a sheath, worn under his shirt, McCullough carried a six- to nine-inch long fish fillet knife, with duct tape for a handle. He did not contend below that he was having the knife sharpened or repaired. The jury in Seattle Municipal Court convicted McCullough of theft and UUW, and he appealed the UUW conviction. The King County Superior Court reversed both defendants' UUW convictions, holding the ordinance violated WASH. CONST., art. I, § 24, and was vague and overbroad. Seattle sought review. Division One certified the cases to this court, and we accepted transfer under RCW 2.06.030.

DISCUSSION
A. SEATTLE'S REGULATION OF KNIVES
Seattle's Municipal Code contains a comprehensive scheme for regulating weapons *1221 generally, and knives in particular. SMC 12A.14. Seattle bans the sale, manufacture, purchase, possession, or carrying of switchblade knives. SMC 12A.14.010E; SMC 12A.14.080A. Seattle makes it unlawful for a person to carry "dangerous knives," whether concealed or unconcealed. SMC 12A.14.080B. "Dangerous knives" are defined as any "fixed-blade knife" or any other knife with a blade more than three and one-half inch in length. SMC 12A.14.010A. A "fixed-blade knife" is further defined as
any knife, regardless of blade length, with a blade which is permanently open and does not fold, retract or slide into the handle of the knife, and includes any dagger, sword, bayonet, bolo knife, hatchet, axe, straight-edged razor, or razor blade not in a package, dispenser or shaving appliance.
SMC 12A.14.010B.
Seattle also exempts certain individuals and activities from the regulation of dangerous knives:
A. A licensed hunter or licensed fisherman actively engaged in hunting and fishing activity including education and travel related thereto; or
B. Any person immediately engaged in an activity related to a lawful occupation which commonly requires the use of such knife, provided such knife is carried unconcealed; provided further that a dangerous knife carried openly in a sheath suspended from the waist of the person is not concealed within the meaning of this subsection;
C. Any person carrying such knife in a secure wrapper or in a tool box while traveling from the place of purchase, from or to a place of repair, or from or to such person's home or place of business, or in moving from one (1) place of abode or business to another, or while in such person's place of abode or fixed place of business.
SMC 12A.14.100.
Thus, under Seattle's Municipal Code, a person is banned from carrying, concealed or unconcealed, dangerous knives, although significant exceptions are established for certain recreational, work-related, and personal uses of dangerous knives. Seattle's regulatory scheme, however, does not completely ban the possession of dangerous knives, but instead regulates the possession and carrying of such weapons.
B. SMC 12A.14.080 DOES NOT VIOLATE ART. I, § 24
Montana and McCullough initially contend that SMC 12A.14.080 violates art. I, § 24 of the Washington Constitution which states:
The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men.
In challenging the constitutionality of SMC 12A.14.080, Montana and McCullough face a heavy burden. A legislative enactment is presumed constitutional, and the parties challenging it must prove it violates the Constitution beyond a reasonable doubt. State v. Myles, 127 Wash.2d 807, 812, 903 P.2d 979 (1995); State v. Ward, 123 Wash.2d 488, 496, 869 P.2d 1062 (1994); City of Spokane v. Douglass, 115 Wash.2d 171, 177, 795 P.2d 693 (1990); State v. Brayman, 110 Wash.2d 183, 193, 751 P.2d 294 (1988); State v. Maciolek, 101 Wash.2d 259, 263, 676 P.2d 996 (1984). If possible, a court will construe a legislative enactment so as to render it constitutional. State v. Reyes, 104 Wash.2d 35, 40, 700 P.2d 1155 (1985).
The threshold inquiry under art. I, § 24 is whether the defendants' ordinary knives are "arms" within the meaning of this provision. This is a question of first impression in Washington.[1] Under even the broadest *1222 possible construction, the term "arms" extends only to weapons designed as such, and not to every utensil, instrument, or thing which might be used to strike or injure another person.[2] Only "[i]nstruments made on purpose to fight with are called arms." State v. Nelson, 38 La.Ann. 942, 946, 58 Am.Rep. 202 (1886).
The parties here have not undertaken the analysis required by State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), with respect to the interpretation of "arms" under art. I, § 24. The respondents summarily contend that art. I, § 24 is to be interpreted more broadly than the Second Amendment, citing State v. Rupe, 101 Wash.2d 664, 706, 683 P.2d 571 (1984), cert. denied, 486 U.S. 1061, 108 S.Ct. 2834, 100 L.Ed.2d 934 (1988), and State v. Spencer, 75 Wash.App. 118, 876 P.2d 939 (1994), review denied, 125 Wash.2d 1015, 890 P.2d 20 (1995). Br. of Resp'ts at 8 n. 5. But this analysis pertained to firearms, not knives. In the absence of a Gunwall analysis on the question of whether, or what type of, knives constitute "arms" under art. I, § 24, we decline to reach this question. Douglass, 115 Wash.2d at 176, 795 P.2d 693; State v. Reding, 119 Wash.2d 685, 696, 835 P.2d 1019 (1992).
If the knives here are not "arms" within the meaning of art. I, § 24, SMC 12A.14.080 is still valid only to the extent that it is a reasonable exercise of police power and is not in conflict with general law. WASH. CONST., art. XI, § 11. Courts give municipalities considerable latitude in exercising police powers. Lenci v. City of Seattle, 63 Wash.2d 664, 667-68, 388 P.2d 926 (1964). Seattle's ordinance is presumed to be constitutional, Douglass, 115 Wash.2d at 177, 795 P.2d 693. A law is a reasonable regulation if it promotes public safety, health *1223 or welfare and bears a reasonable and substantial relation to accomplishing the purpose pursued. Duckworth v. City of Bonney Lake, 91 Wash.2d 19, 27, 586 P.2d 860 (1978). It is presumed that the legislation was passed with respect to any state of facts which could be reasonably conceived to warrant the legislation. Id. at 27, 586 P.2d 860; Lenci, 63 Wash.2d at 668, 388 P.2d 926. If the regulation tends to promote public safety, health, morals or welfare, then its wisdom or necessity is a matter left exclusively to the legislative body. Duckworth, 91 Wash.2d at 27, 586 P.2d 860.
SMC 12A.14.080 is a reasonable exercise of the police power to promote safety, peace and good order. The Seattle City Council is authorized to enact needed police regulations to punish practices dangerous to public safety or health, and preserve the public peace and good order. WASH. CONST., art. XI, § 11; RCW 35.22.280(35). As the Court of Appeals noted with respect to RCW 9.41.270, which makes it unlawful for a person to carry a "firearm, dagger, sword, knife or other cutting or stabbing instrument" in a manner which warrants alarm in others:
People have a strong interest in being able to use public areas without fearing for their lives. The statute protects this interest by requiring people who carry weapons to do so in a manner that will not warrant alarm.
Spencer, 75 Wash.App. at 124, 876 P.2d 939.
SMC 12A.14.080 furthers a substantial public interest in safety, addressing the threat posed by knife-wielding individuals and those disposed to brawls and quarrels, through reducing the number and availability of fixed-blade knives in public places in Seattle. It addresses the reality of life in our state's largest city, where at all hours residents must step outside their homes and workplaces and mingle with numerous strangers in public places. Unfortunately, street crime involving knives is a daily risk. As the court in People v. Ortiz, 125 Misc.2d 318, 324-25, 479 N.Y.S.2d 613 (N.Y.City Crim.Ct.1984), stated:
As the City Council found in its investigative phase, and as any sentient person knows, knives are implicated in many street crimes, and continue to be a prime cause of serious injury and death....
Of course, a perfect definition is an impossibility; what the City Council has attained is reasonable precision. If an occasional fisherman or hunter should fall victim to this local law, an affirmative defense is provided.
If such a law were enacted in a region dotted with wild life reserves, or if this were a more innocent age, perhaps it would not be reasonable. However, as a considered response to a serious and persistent urban problem, the local law is valid and reasonably calculated to attain the desired goal, removal of weapons from the streets.
The Seattle City Council reasonably could conceive that a similar state of facts existed in Seattle. We presume the ordinance was passed in response to such facts. Lenci, 63 Wash.2d at 668, 388 P.2d 926.
Even if the knives here are "arms," the constitutional guaranty of the right to bear arms in art. I, § 24 does not place such rights "entirely beyond the police power of the state." State v. Gohl, 46 Wash. 408, 410, 90 P. 259 (1907). We have consistently held that the right to bear arms in art. I, § 24 is not absolute, but instead is subject to "reasonable regulation" by the State under its police power. Morris v. Blaker, 118 Wash.2d 133, 144, 821 P.2d 482 (1992); Rupe, 101 Wash.2d at 707 n. 9, 683 P.2d 571; State v. Krantz, 24 Wash.2d 350, 353, 164 P.2d 453 (1945); Gohl, 46 Wash. at 410, 90 P. 259; Spencer, 75 Wash.App. at 121, 876 P.2d 939; Second Amendment Found. v. City of Renton, 35 Wash.App. 583, 586, 668 P.2d 596 (1983). In State v. Delgado, 298 Or. 395, 692 P.2d 610, 47 A.L.R.4th 643(1984), cited by respondents for the view that knives are "arms" and any ban on the carrying of "arms" is unconstitutional, the Oregon court made clear the regulation of arms, short of a complete ban, was not unconstitutional under the Oregon Constitution:
We stress again, as we have stressed before, that this decision does not mean individuals have an unfettered right to possess or use constitutionally protected arms *1224 in any way they please. The legislature may, if it chooses to do so, regulate possession and use. This court recognizes the seriousness with which the legislature views the possession of certain weapons, especially switch-blades. The problem here is that ORS 166.510(1) absolutely proscribes the mere possession or carrying of such arms. This the constitution does not permit.
(Footnotes and citations omitted.) Id. at 403-04, 692 P.2d 610.
While we have not yet decided the parameters of the individual right to bear arms, Rupe, 101 Wash.2d at 706, 707 n. 9, 683 P.2d 571, we have stated that to pass constitutional muster, an arms regulation must be a "reasonable limitation," Morris, 118 Wash.2d at 145, 821 P.2d 482, one that is reasonably necessary to protect public safety or welfare, and substantially related to legitimate ends sought. Spencer, 75 Wash.App. at 121, 876 P.2d 939; Second Amendment Found., 35 Wash.App. at 586-87, 668 P.2d 596. This analysis requires balancing the public benefit from the regulation against the degree to which it frustrates the purpose of the constitutional provision. Id. The constitutional text indicates the right is secured not because arms are valued per se, but only to ensure self-defense or defense of state. This suggests the constitutional right should be viewed in such a light. Benjamin v. Bailey, 234 Conn. 455, 465, 662 A.2d 1226, 1232 (1995); Arnold v. Cleveland, 67 Ohio St.3d 35, 43, 616 N.E.2d 163 (1993).
Courts in Washington have upheld various restrictions and prohibitions on the possession and carrying of firearms and weapons.
In State v. Tully, 198 Wash. 605, 89 P.2d 517 (1939), we upheld the concealed weapons permit requirement and a prohibition preventing those convicted of a violent crime from possessing a pistol. In State v. Walsh, 123 Wash.2d 741, 750, 870 P.2d 974 (1994), we upheld a law making possession of firearm and spotlight prima facie evidence of unlawfully hunting big game. In State v. Barnes, 42 Wash.App. 56, 708 P.2d 414 (1985), the court upheld a ban on possession of weapons in penal institutions. In Second Amendment Found., 35 Wash.App. at 586-87, 668 P.2d 596, the court upheld an ordinance banning firearms in certain places where alcohol is served. In Spencer, the court upheld the ancient proscription upon carrying a firearm under circumstances that warrant alarm for the safety of others. 75 Wash.App. at 124, 876 P.2d 939. In both Second Amendment Foundation and Spencer, the court concluded the laws were reasonable because they promoted substantial public interests in safety, and minimally affected the right to bear arms in that they did not proscribe all carrying of a weapon. Id. at 124, 876 P.2d 939.[3]
Montana and McCullough assert that SMC 12A.14.080 is an unreasonable exercise of police power that adversely impacts their right to self-defense and sweeps so broadly that such ordinary activities as cutting meat with a steak knife in a restaurant or peeling an apple in a park are affected. Montana and McCullough overstate the sweep of the ordinance and their reliance on Delgado is misplaced.
SMC 12A.14.080 is not a complete ban on the possession and carrying of knives in Seattle. First, the ordinance does not forbid *1225 possession of knives. Under the terms of the ordinance, possession of fixed blade knives at home or a place of business is permitted. Even use of a knife in a restaurant or park to peel an apple would not be proscribed.[4]Carrying a fixed blade knife is banned by the ordinance, unless a person is doing so for hunting or fishing purposes, for work, or to and from home or work. Moreover, the ordinance does not regulate common pocket or traditional Scout knives whose blades fold.
Given the reality of modern urban life, Seattle has an interest in regulating fixed blade knives to promote public safety and good order. Seattle may decide fixed blade knives are more likely to be carried for malevolent purposes than for self-defense, and the burden imposed on innocent people carrying fixed blade knives is far outweighed by the potential harm of other people carrying such knives concealed or unconcealed. The harm of carrying concealed knives is even more manifest. Myles, 127 Wash.2d at 817, 903 P.2d 979. Seattle has not enacted a complete prohibition on possession and carrying knives, as concerned the Delgado court, but has instead regulated the carrying, transport, and use of knives, presumably for all of the considerations expressed in Ortiz. We hold that SMC 12A.14.080 is a reasonable arms regulation under Seattle's police power, and does not violate WASH. CONST., art. I, § 24.
C. SMC 12A.14.080 IS NEITHER VAGUE NOR OVERBROAD
Montana and McCullough contend that SMC 12A.14.080 is vague and overbroad. The Due Process Clause of the Fourteenth Amendment requires fair warning of proscribed conduct.[5] A penal law is void for vagueness if it does not define the criminal offense with sufficient definiteness that ordinary people can understand what is proscribed, or if it does not provide ascertainable standards of guilt to protect against arbitrary enforcement. Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); Douglass, 115 Wash.2d at 178, 795 P.2d 693; Myles, 127 Wash.2d at 812, 903 P.2d 979. Persons of common intelligence must not be forced to guess at the meaning of a penal statute. State v. Smith, 111 Wash.2d 1, 7, 759 P.2d 372 (1988). Unless First Amendment rights are implicated, the court considers only whether the statute is sufficiently definite as applied to the defendant's particular conduct. Myles, 127 Wash.2d at 812 n. 2, 903 P.2d 979; State v. Coria, 120 Wash.2d 156, 163, 839 P.2d 890 (1992); State v. Sigman, 118 Wash.2d 442, 445, 826 P.2d 144, 24 A.L.R.5th 856 (1992); Douglass, 115 Wash.2d at 182-83, 795 P.2d 693. As they have not argued a First Amendment effect to the ordinance, the ordinance as applied to Montana and McCullough is not vague. They have not demonstrated how they failed to understand that carrying knives in the course of their particular activities was proscribed. Given the explicit direction of the ordinance and its exemptions, any ordinary person would easily understand the type of knife, the manner of carrying, and the exceptions.
In assessing the second prong of a vagueness analysis, the court determines whether the statute invites inordinate discretion on the part of law enforcement authorities. Douglass, 115 Wash.2d at 181, 795 P.2d 693; City of Tacoma v. Luvene, 118 Wash.2d 826, 846-47, 827 P.2d 1374 (1992); Maciolek, 101 Wash.2d at 267, 676 P.2d 996. Law enforcement officials have ascertainable enforcement standards, given the plain objective of the ordinance to limit quick and easy access to dangerous knives in public places. The ordinance is more definite than similar laws that have withstood vagueness challenges,[6] and *1226 meets the test of definiteness. SMC 12A.14.080 is not unconstitutionally vague.
We also reject the overbreadth challenges. In general, "[a] law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities." City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989); Luvene, 118 Wash.2d at 839, 827 P.2d 1374; City of Seattle v. Webster, 115 Wash.2d 635, 641, 802 P.2d 1333, 7 A.L.R.5th 1100 (1990) (rejecting overbreadth challenge to ordinance affecting free speech activity), cert. denied, 500 U.S. 908, 111 S.Ct. 1690, 114 L.Ed.2d 85 (1991). The overbreadth doctrine may not be employed unless First Amendment activities are within the scope of the challenged enactment. State v. Halstien, 122 Wash.2d 109, 122, 857 P.2d 270 (1993).[7]
A party may challenge the constitutionality of a statute only as applied to the party, and may not challenge it on the ground that the statute might be unconstitutional as applied to someone else. Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2914-15, 37 L.Ed.2d 830 (1973). A limited exception to this principle is found in First Amendment cases, where persons whose own constitutional rights are not violated by the application of the statute to them may raise an "overbreadth" challenge, and claim the statute's existence would chill First Amendment activities of others not before the court. Id. at 612, 93 S.Ct. at 2915-16. If a statute criminalizes First Amendment expression or activity, it is overly broad, or invalid, if it "would be unconstitutional as applied to others even if not as applied" to the defendant. State v. Motherwell, 114 Wash.2d 353, 371, 788 P.2d 1066 (1990).
SMC 12A.14.080 does not impinge upon speech, association, soliciting persons in public places, religion, or any other First Amendment concern. The overbreadth challenges of Montana and McCullough fail. Their arguments merely restate their view, which we have already rejected, that the ordinance is unreasonable.

CONCLUSION
SMC 12A.14.080 does not violate art. I, § 24 of our Constitution. Seattle has adopted a reasonable police regulation that addresses a serious question of public safety and order. Seattle's ordinance reasonably balances the concern about public safety against the concern that innocent conduct be impacted. The exemptions to the ordinance are adequate to narrow its application to situations where it is reasonable to presume that a person with a dangerous knife in public is carrying such a knife for a mischievous purpose. The ordinance is neither unconstitutionally vague, nor overbroad.
We reverse the decision of the King County Superior Court and remand Montana's case for reinstatement of his conviction. As the trial court did not reach an instructional issue, we remand McCullough's case to the superior court for further proceedings consistent with this opinion.
*1227 DOLLIVER and SMITH, JJ., and PEKELIS, J. Pro Tem., concur.
SANDERS, J., did not participate.
DURHAM, Chief Justice (concurring).
I concur in Justice Alexander's determination that the knives possessed by McCullough and Montana are not "arms" for purposes of Const. art. I, § 24. Having held that Seattle Municipal Code 12A.14.080 is not unconstitutional as applied to these Respondents, I believe it is unwise to speculate about the boundaries of the "reasonable regulation" limit on the constitutional right to bear arms in self-defense.
GUY, J., concurs.
ALEXANDER, Justice (concurring).
Although I concur in the result reached by the majority, I choose to write specially because I take issue with the majority opinion insofar as it leaves an impression that Seattle's ordinance, which bans the carrying of certain kinds of knives, is a reasonable restriction on a citizen's right "to bear arms in defense of himself," as guaranteed by the Washington Constitution.[1]
It is my view that the majority incorrectly determines that the ordinance, Seattle Municipal Code 12A.14.080(B) (1987), which makes it "unlawful for a person knowingly to... [c]arry concealed or unconcealed on his/ her person any dangerous knife," passes muster under Washington's constitution when applied to a case where the knives are "arms," as that term was envisioned by the drafters of our state constitution. As the majority has noted, article I, section 24 is the provision in the state constitution that recognizes a citizen's right "to bear arms in defense of himself, or the state." In my judgment, there is much merit to the argument that the drafters of the state constitution intended, by those plain words, absolutely to protect a person's right to carry arms for personal defense. Even assuming, though, that this constitutional right is not absolute as against the government's police power, Seattle's ordinance is such a broad prohibition on the possession and carrying of knives, including those that fall within the definition of "arms," that it is not, as the majority indicates, a "reasonable regulation." Majority op. at 1223.
In short, I fail to see how the ordinance can be considered constitutional when it is applied so as to prohibit the carrying of "arms" for purposes of self-defense. Indeed, the majority opinion glosses over a seeming anomaly: the ordinance exempts from its scope the carrying of knives while engaged in hunting, fishing, the culinary arts, and other lawful occupations, activities not protected by the constitution, yet does not exempt from its scope the carrying of arms for the purpose recognized in the state constitution, self-defense.
Notwithstanding my disagreement with the majority, I concur in the result it reaches here because I am satisfied that the knives possessed by McCullough and Montana are not arms. Although certain objects that could fall into the generic definition of a dangerous knife may well be considered arms, the knives possessed by McCullough and Montana (a small paring knife and a filleting knife) are not, in my opinion, either traditional or modern arms of self-defense.[2] Therefore, they are not afforded protected status by article I, section 24 of the state constitution.
MADSEN and JOHNSON, JJ., concur.
NOTES
[1] While a question of first impression in Washington, other states have addressed the scope of the term "arms" under their state constitutional provisions on the right to bear arms, holding that "arms" mean weapons borne by citizens in the militia or recognized in civilized conflict, as opposed to those used by ruffians, brawlers or assassins. Many of these cases antedate the adoption of art. I, § 24 in 1889. State v. Swanton, 129 Ariz. 131, 629 P.2d 98 (1981) ("arms" are those weapons used in civilized warfare and not those used by ruffians, brawlers or assassins); Fife v. State, 31 Ark. 455, 461, 25 Am.Rep. 556 (1876) ("arms" includes firearms used in militia, not weapons customarily used in "private quarrels or brawls" such as a pocket pistol); Hill v. State, 53 Ga. 472, 475 (1874) (indictment for carrying pistol; "arms" means militia arms, including guns, swords and bayonets, but not pocket pistols, dirks, sword-canes, toothpicks, or other "relics of past barbarism"); City of Salina v. Blaksley, 72 Kan. 230, 83 P. 619 (1905) (arms means only those proper for militia purposes); State v. Smith, 11 La.Ann. 633, 66 Am.Dec. 208 (1856) ("arms" refers to those borne by a people in war, not those used by evil men); People v. Brown, 253 Mich. 537, 541, 235 N.W. 245, 82 A.L.R. 341 (1931) (arms are those proper for militia or private defense, rather than the "peculiar tools of the criminal"); People v. Persce, 204 N.Y. 397, 403, 97 N.E. 877 (1912) ("arms" includes only "legitimate weapons of defense and protection" not "instruments which are ordinarily used for criminal and improper purposes"); State v. Kerner, 181 N.C. 574, 107 S.E. 222 (1921) ("arms" includes pistol, but not bowie knife, dirk, dagger, slung shot, loaded cane, metallic knuckles); Ex parte Thomas, 21 Okla. 770, 97 P. 260 (1908) (court upheld ban on carrying a pistol despite constitutional right to bear arms for self-defense as "arms" included only those weapons used in civilized warfare); Pierce v. State, 42 Okla.Crim. 272, 278-79, 275 P. 393, 73 A.L.R. 833 (1929) ("arms" means military weapons in civilized warfare, not a pistol or the weapons of the ruffian, brawler or the assassin); Andrews v. State, 50 Tenn. 165, 171, 8 Am.Rep. 8 (1871) ("arms" are "weapons as are properly designated as such" for military use to defend the state; upholding, except as to revolvers, a ban on public and private carrying of "dirk, sword-cane, Spanish stiletto, belt or pocket pistol or revolver"); Aymette v. State, 21 Tenn. 154 (1840) (prosecution for carrying bowie knife; arms includes only proper military equipment, not weapons employed in private broils or which are efficient only in the hand of the robber and assassin); State v. Duke, 42 Tex. 455, 458 (1875) (only a rifle, shotgun, and non-concealable pistols were "arms" as those weapons were commonly kept and were "appropriate for open and manly use in self-defense"); State v. Workman, 35 W.Va. 367, 373, 14 S.E. 9 (1891) ("arms" in a prior constitutional provision refers to weapons of war used by the militia, "such as swords, guns, rifles, and muskets" and not "pistols, bowie-knives, brass knuckles, billies, and such other weapons as are usually employed in brawls, street fights, duels, and affrays, and are only habitually carried by bullies, blackguards, and desperados, to the terror of the community and injury of the State.").

Contra, State v. Kessler, 289 Or. 359, 614 P.2d 94 (1980) ("arms" encompasses rifle, gun, sword, knife, spear and club), and State v. Delgado, 298 Or. 395, 692 P.2d 610, 47 A.L.R.4th 643 (1984) ("arms" includes switchblade knives).
[2] Art. I, § 24 references the right to bear "arms" for self defense and defense of the state. Admittedly, any hard object can be used as a weapon, but it would be absurd to give every knife, pitchfork, rake, brick or other object conceivably employable for personal defense constitutional protection as "arms." We think the term "arms" could mean at most only certain weapons, and such weapons may not include ordinary culinary utensils or fishing knives.
[3] We believe it is highly significant that contemporaneously with the adoption of art. I, § 24 in 1889, legislative enactments regulated weapons including knives. See 1881 Territorial Code of Washington, § 810 (exhibiting pistol, bowie knife, other dangerous weapon in threatening manner), and § 929 (carrying concealed weapon); Hill's Code, Vol. II (1891), § 37 (exhibiting pistol, bowie-knife or other dangerous weapon); § 100 (exhibiting dangerous weapon); and § 166 (carrying a "concealed weapon," defined as "a revolver, pistol, or other fire-arms, or any knife (other than an ordinary pocket knife), or any dirk or dagger, sling-shot, or metal knuckles, or any instrument by the use of which injury could be inflicted"); Ballinger's Code, Vol. II (1897), § 7082 (flourishing dangerous weapon); § 7083 (exhibiting "pistol, bowie-knife, or other dangerous weapon" in crowd); and § 7084 (carrying "concealed weapon, consisting of either a revolver, pistol, or other fire-arms, or any knife ... or any dirk or dagger, sling-shot, or metal knuckles, or any instrument by the use of which injury could be inflicted").

See RCW 9.41.250 (banning possession of switchblades and other spring blade knives and carrying "daggers" with intent to conceal); RCW 9.41.270 (banning the carrying or displaying of a "dagger, sword, knife or other cutting or stabbing instrument" in an alarming or intimidating manner).
[4] If a person were carrying a knife in a picnic basket from home, or a lunch box from work to a park where the apple was peeled, and the knife was placed in the basket or lunch box after its use for the return home or to work, SMC 12A.14.100C applies.
[5] In the absence of an analysis as described in Gunwall, 106 Wash.2d at 58-63, 720 P.2d 808, we decide the vagueness issue under federal constitutional law. See Douglass, 115 Wash.2d at 176-77, 795 P.2d 693.
[6] Myles, 127 Wash.2d at 812-15, 903 P.2d 979 (furtive carrying); Maciolek, 101 Wash.2d at 267, 676 P.2d 996 (weapon capable of bodily harm carried in a manner manifesting intent to intimidate or warranting alarm); Spencer, 75 Wash. App. at 124-27, 876 P.2d 939; Simmons v. State, 262 Ga. 674, 424 S.E.2d 274 (1993) ("knife designed for the purpose of offense and defense"); Hayes v. State, 672 S.W.2d 246 (Tex.App.Beaumont 1984) (knife "designed to cut or stab another by being thrown"); Upshur v. State, 420 A.2d 165 (Del.1980) ("knife of any sort"); State v. Harris, 40 Or.App. 317, 594 P.2d 1318 (1979) ("knife, other than an ordinary pocketknife"); Haynes v. State, 24 Tenn. 120, 5 Hum. 120 (1844) ("Arkansas tooth-pick" or knife resembling a Bowie knife).
[7] We have generally confined the overbreadth argument to statutes or ordinances impinging on First Amendment activities. City of Seattle v. Huff, 111 Wash.2d at 925, 767 P.2d 572; Webster, 115 Wash.2d at 641, 802 P.2d 1333; Luvene, 118 Wash.2d at 839, 827 P.2d 1374; Halstien, 122 Wash.2d at 122, 857 P.2d 270.

This is consistent with the United States Supreme Court rationale for the overbreadth doctrine in Broadrick, 413 U.S. at 612 [93 S.Ct. at 2915-16]. "[O]utside the limited First Amendment context, a criminal statute may not be attacked as overbroad." Schall v. Martin, 467 U.S. 253, 269 n. 18, 104 S.Ct. 2403 [2412 n. 18], 81 L.Ed.2d 207 (1984). Where one complains that a statute criminalizes innocent or lawful uses of items that are also used for illegal purposes, the complaint confuses overbreadth and vagueness challenges or simply amounts to a claim of denial of substantive due process. Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 n. 9, 102 S.Ct. 1186 [1192 n. 9], 71 L.Ed.2d 362 (1982).
[1] I readily agree with the view expressed by Chief Justice Durham in her concurrence to this opinion to the effect that the majority should not have entered into speculation about the boundaries of regulation of the state constitutional right to bear arms in self-defense. The fact remains, however, that the bulk of the majority opinion addresses that issue. Therefore, I feel constrained to address it.
[2] See State v. Delgado, 298 Or. 395, 692 P.2d 610 (1984) (where the Oregon Supreme Court set forth a detailed history of the "fighting knife" and concluded that, historically, certain knives, for example, bowie knives and swords, have been commonly used for self-defense and, therefore, may be considered arms under article I, section 27 of the Oregon constitution, which provides that "[t]he people shall have the right to bear arms for the defence (sic) of themselves, and the State").