**FILED**
**JULY 23, 2020**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MATT THOMPSON, | ) | No. 36554-9-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF SOCIAL AND | ) | |
| HEALTH SERVICES, BOARD OF | ) | |
| APPEALS, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, C.J. — Matt Thompson appeals a finding by the Department of Social and Health Services (Department) that he financially exploited his mother. The applicable standards of review compel us to affirm.

## FACTS

Mr. Thompson's mother moved into a residential facility after suffering a stroke. Her mental faculties remained largely intact and she signed a power of attorney, authorizing Mr. Thompson to handle her financial affairs. The power of attorney provided

that Mr. Thompson would exercise his authority under the power of authority in a "fiduciary capacity." Clerk's Papers (CP) at 323.

Two years after execution of the power of attorney, the Department's Adult Protective Services (APS) program initiated a vulnerable adult investigation. The concern was Mr. Thompson had financially exploited his mother by mismanaging her finances and using her money for his own benefit. Mr. Thompson's mother met the definition of a "vulnerable adult" because she was over 60 years of age and living in a residential care facility. RCW 74.34.020(22)(a).

APS interviewed Mr. Thompson's mother as part of the investigation. The investigator shared what she had learned regarding the ways Mr. Thompson had been using his mother's money. This information caused Mr. Thompson's mother to be upset. She stated Mr. Thompson "should not have spent that money." CP at 435. Mr. Thompson's mother said she was "distressed to think that [Mr. Thompson] may be using her money for himself." *Id*. at 121. She also said she felt "used and hated by her family." *Id*. at 122.

Mr. Thompson's mother soon had a change of heart. Shortly after APS interviewed Mr. Thompson's mother, the investigator interviewed Mr. Thompson. The day after that interview, Mr. Thompson's mother called APS to complain about what the Department

was doing to her son. She was concerned Mr. Thompson would be sued or thrown in jail.

Mr. Thompson's mother accused the Department of lying and stated that any money spent

by Mr. Thompson was done with her permission.

Despite the mother's changed position, the Department notified Mr. Thompson

of APS's determination that he financially exploited a vulnerable adult as set forth in

RCW 74.34.020(7). Mr. Thompson denied the allegation and requested a hearing before

an administrative law judge (ALJ).[1]

Several witnesses appeared at Mr. Thompson's hearing. In his testimony,

Mr. Thompson agreed he spent his mother's money for his own benefit. But he claimed

she wanted him to do so and that his actions helped keep her eligible for benefits. Mr.

Thompson explained that he sometimes made deposits into his mother's account in order

to help her pay expenses. However, he did not keep track of whether the money he

personally spent from his mother's account was equal to his deposits. Although the power

of attorney authorized Mr. Thompson to be compensated for work done on behalf of his

mother, Mr. Thompson admitted he was never formally compensated for his services.

---

[1] A substantiated finding of financial exploitation results in placement of the abuser's name in a state registry. WAC 388-71-01280. Such placement can have adverse effects on employment and volunteer activities. *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 545-46, 389 P.3d 731 (2017).

Mr. Thompson's mother testified at the hearing and maintained that she did not object to Mr. Thompson's use of her money. She emphasized her money belonged to the entire family. She claimed she was intimidated when the APS investigator first contacted her for an interview. She explained that her son handled her finances and that she deferred to him completely on such matters. She testified Mr. Thompson was authorized to spend her money "'as he saw fit.'" *Id*. at 13.

The ALJ reversed the APS finding of financial exploitation. It found Mr. Thompson's mother credible and ruled Mr. Thompson had not engaged in deception, intimidation, or undue influence. The ALJ also found the APS investigator not credible. It determined the investigator had prejudiced the case by selectively seeking out evidence to support her initial theory of the case. According to the ALJ, the investigation into Mr. Thompson's actions was "arrogant" and violated the rights of Mr. Thompson's mother and her family. *Id*. at 56.

The Department appealed, and a board of appeals review judge reversed the ALJ. The review judge did not specifically disagree with the ALJ's credibility determinations. Instead, the review judge focused on the legal issue of Mr. Thompson's fiduciary duty to his mother. The review judge noted that, given the fiduciary relationship created by the power of attorney, the burden was on Mr. Thompson to prove that his self-gifting was not

the result of undue influence. Because Mr. Thompson failed to satisfy this burden, the review judge sustained the Department's initial finding of financial exploitation under RCW 74.34.020(7)(b).

Mr. Thompson appealed to superior court. He admitted to sloppy bookkeeping, but argued his actions did not amount to financial exploitation because they were ratified by his mother. The court affirmed the review decision and final order.

Mr. Thompson timely appeals the superior court's determination to this court.

## ANALYSIS

*Standard of review*

Judicial review of an agency's adjudicative order is governed by the Administrative Procedure Act, chapter 34.05 RCW. The Court of Appeals stands in the same position as the superior court. *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 548, 389 P.3d 731 (2017). Our focus is the decision of the review judge, not the initial order issued by the ALJ. *Id.* A review judge has the power and authority of a fact-finder. RCW 34.05.464(4); WAC 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(1). However, because review judges do not conduct in-person hearings, they are expected to give due regard to an ALJ's opportunity to observe witnesses. *Id.*

*Review judge's finding of financial exploitation*

Mr. Thompson challenges the review judge's decision on the basis that the judge misapplied the governing law and failed to accord respect to the ALJ's credibility determinations. *See* RCW 34.05.570(3)(d) (challenge based on legal error); RCW 34.05.570(3) (e) (challenged based on substantial evidence). We find no error.

The review judge based its decision on RCW 74.34.020(7)(b). This provision defines "financial exploitation" as illegal or improper use or control over a vulnerable adult's resources that occurs through a "breach of fiduciary duty." *Id*. A breach of fiduciary duty includes "the misuse of a power of attorney . . . that results in the unauthorized appropriation . . . of the . . . resources . . . of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult." *Id*. "[A] fiduciary is bound to act with the utmost good faith and loyalty." *Bryant v. Bryant*, 125 Wn.2d 113, 118-19, 882 P.2d 169 (1994). When a gift is made from a principal to a fiduciary, there is a presumption of undue influence. *See McCutcheon v. Brownfield*, 2 Wn. App. 348, 356, 467 P.2d 868 (1970). The burden falls on the fiduciary to prove the absence of undue influence by clear, cogent and convincing evidence. *Id*.at 356-57. This burden involves showing the gift was made "freely, voluntarily, and with a full understanding of the facts." *Id*. at 356 (quoting 38 AM. JUR. 2d *Gifts* § 106 (1968)). The presumption of undue

influence applies even when the principal and fiduciary have a parent-child relationship.

*Id.*

Substantial evidence supports the review judge's conclusion that Mr. Thompson failed to rebut the presumption of undue influence. There was no evidence Mr. Thompson carefully explained his self-gifting to his mother. While there was some evidence Mr. Thompson's mother approved of the gifts after the fact, the weight of this evidence was questionable given his mother's inconsistencies and the timing of her change of heart. In addition, there was little to no evidence that Mr. Thompson's mother was aware of and approved of each individual gift, either beforehand or afterwards.

The record as a whole supports the review judge's finding that Mr. Thompson's self-appropriations of his mother's resources were unauthorized due to undue influence and therefore a breach of fiduciary duty. This breach meets the definition of financial exploitation under RCW 74.34.020(7)(b).

*Constitutional challenge*

In addition to challenging the review judge's findings and conclusions, Mr. Thompson contends the Department's actions were unconstitutional because they violated his mother's right to privacy and equal protection. *See* RCW 34.05.570(3)(a) (challenge based on constitutional violation). We agree with the Department that Mr. Thompson

lacks standing to bring this claim. *See City of Seattle v. Montana*, 129 Wn.2d 583, 598,

919 P.2d 1218 (1996), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d

682, 451 P.3d 694 (2019) (A "party may challenge the constitutionality of a statute only

as applied to the party and may not challenge it on the ground that the statute might be

unconstitutional as applied to someone else."). Mr. Thompson is the party to this appeal,

not his mother. We will not review arguments raised on her behalf.

CONCLUSION

The agency order is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, C.J.

WE CONCUR:


_____
Siddoway, J.

_____
Lawrence-Berrey, J.

8