[No. 60000-7.    En Banc.    April 6, 1994.]

*In the Matter of the Personal Restraint of*
BRIAN KEITH LORD, *Petitioner.*

*Peter A. Camiel* and *Mair, Camiel & Kovach; Sheryl Gordon McCloud*, for petitioner (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney*, and *Pamela B. Loginsky, Irene K. Asai, Jeffrey M. Wolf*, and *Donald J. Porter, Deputies*, for respondent.

PER CURIAM — On July 18, 1987, a Kitsap County jury convicted the petitioner, Brian Keith Lord, of aggravated first degree murder and he was sentenced to death. His conviction and sentence were affirmed on appeal. *State v. Lord*, 117 Wn.2d 829, 822 P.2d 177 (1991), *cert. denied*, 121 L. Ed. 2d 112 (1992). Lord then moved for and obtained a stay of execution in order to file a personal restraint petition (PRP), claiming error in the conviction and sentence of death. This court has denied the PRP. *In re Lord*, 123 Wn.2d 296, 301, 868 P.2d 835 (1994).

Subsequent to the filing of the above opinion, both the State and the petitioner have brought to our attention certain confusion in the law regarding the effect of our denial of this PRP. Specifically, we must clarify: (1) whether the decision denying the PRP effectively lifted the stay entered upon the filing of the PRP, such that a new execution date can be automatically set and (2) whether a new death warrant must be executed by the clerk and judge of the trial court pursuant to RCW 10.95.160(2). We answer both questions in the negative.

The State argues that review of Lord's case ended with the denial of relief under the PRP. According to the State, this court's stay of execution, issued to allow Lord to file a PRP, ended with the denial of the petition since a stay was "no longer needed to insure the orderly review of Lord's

PRP because that original action is over". State's Motion To Lift Stay, at 5. The State claims that neither a mandate nor a certificate of finality[1] from the Supreme Court is needed to end review of the case because the court's action in such matters is an "interlocutory decision" as defined by RAP 12.3(b).

■ An "interlocutory decision" is any decision by this court which is not a "decision terminating review". A "decision terminating review" is defined as having three characteristics: (1) it is filed after review is accepted by the appellate court filing the decision, (2) it terminates review unconditionally, and (3) it is "(i) a decision on the merits, or (ii) a decision by the judges dismissing review, or (iii) a ruling by a commissioner or clerk dismissing review, or (iv) an order refusing to modify a ruling by the commissioner or clerk dismissing review". RAP 12.3(a)(3). This PRP is an original proceeding brought in this court. RAP 16.3(c). As such, technically there is no "decision terminating review" because there is no lower court opinion under direct review.[2] Therefore, action on a PRP is an interlocutory decision and a mandate does not issue. RAP 12.5(a). *See also* RAP 16.14(c) (limiting this court's review of a Court of Appeals decision on a PRP to the procedures outlined in RAP 13.5 for discretionary review of interlocutory decisions).

However, the rules do provide for the filing of a motion for reconsideration of "a decision by the judges granting or denying a personal restraint petition on the merits". RAP 12.4(a). This privilege is not explicitly extended to other interlocutory decisions, such as certified questions.[3] *See*

---

[1]Although not specifically provided for by the Rules of Appellate Procedure, a "certificate of finality" has traditionally been issued by the clerk's office when review of an interlocutory decision is at an end. This certificate functions essentially as a "mandate" for such decisions.

[2]Although the petitioner is challenging his or her conviction, a PRP is a civil procedure, and is not considered direct review of the conviction. *State v. LaBeur*, 33 Wn. App. 762, 764, 657 P.2d 802, *review denied*, 99 Wn.2d 1013 (1983). *See generally In re Runyan*, 121 Wn.2d 432, 853 P.2d 424 (1993).

[3]RAP 12.4(a) already provides for a motion for reconsideration of a decision terminating review. The separate mention of PRPs would be redundant if action on a PRP were a decision terminating review.

RAP 16.16; RAP 12.3(b). As always, petitioners are given 20 days in which to file such a motion. RAP 12.4(b). The State's position seems to be that the stay should automatically lift upon our filing an opinion disposing of the PRP, regardless of this provision for a motion for reconsideration.

■ Although the State is correct that a decision on a PRP is an interlocutory decision and no mandate need issue, it does not follow that the stay issued by this court automatically dissolves upon the filing of the decision. The statute provides that if an execution is stayed for any reason, "the new execution date is automatically set at thirty judicial days after the entry of an *order of termination or vacation of the stay* by such court unless the court invalidates the conviction, sentence, or remands for further judicial proceedings". (Italics ours.) RCW 10.95.160(2). Entry of the stay is not automatic upon the filing of a PRP; rather, it must be separately applied for and is granted "to insure effective and equitable review". RAP 8.3. Just as this court entered an order staying the execution for the filing of a PRP, this court will also have to enter an order specifically lifting the stay. Such an order is not inherent in the denial of a PRP, and must be entered separately.

■ This court has broad discretion as to when such an order lifting the stay should be entered. RAP 8.3. Our normal practice, and one which we will continue to follow, is to lift the stay automatically after the time for the filing of a motion for reconsideration has run, the motion has been denied, or this court's proceedings are otherwise at an end. Counsel can move the court for earlier or later vacations of the stay, but such motions will be granted only under extraordinary circumstances. Barring the filing of such motion, the court itself will lift the stay once the proceedings have come to a close. Although not a technical requirement of the rules, the clerk will also continue to issue a "certificate of finality" at that time to indicate to all lower courts and the federal courts that the proceedings in this court have come to an end.

■ As to the second question raised, RCW 10.95.160 was amended in 1990 to make clear that once a death warrant

has issued and an initial date for execution is set, no further action need be taken by the trial court in order to reset this date. Subsection (1) of the statute covers entry and delivery of the death warrant and setting the initial date of execution. Subsection (2) states:

> If the date set for execution under subsection (1) of this section is stayed by a court of competent jurisdiction for any reason, the new execution date is *automatically* set at thirty judicial days after the entry of an order of termination or vacation of the stay by such court unless the court invalidates the conviction, sentence, or remands for further judicial proceedings. The presence of the inmate under sentence of death shall not be required for the court to vacate or terminate the stay according to this section.

(Italics ours.) RCW 10.95.160(2). As clearly stated by the statute, the date of execution will be reset automatically. The statute contemplates that the Department of Corrections will, as a matter of course, set a new execution date once the stay is lifted. No further judicial action is necessary for this date to be set. Even if there are further judicial proceedings in the intervening time, they will have no effect on the date of execution until and unless a further stay is ordered.