58 P.3d 901 (2002)
114 Wash.App. 162
STATE of Washington, Respondent,
v.
David M. SCHLICHTMANN, a/k/a David Glass, Appellant.
No. 48594-6-I.
Court of Appeals of Washington, Division 1.
September 16, 2002.
Reconsideration Denied and Publication Ordered November 1, 2002.
*902 David M. Schlichtmann, Pro se.
Oliver Ross Davis, Seattle, WA, for Appellant.
Heather M. Jensen, Stephen H. Hassett, Ofc of Atty General, Olympia, WA, for Respondent.
PER CURIAM.
David Schlichtmann was convicted of one count of second degree assault and one count of third degree assault based on his overzealous spanking of his girlfriend's two sons, who were seven and six years old at the time of trial. He appeals, contending that the prosecutor argued facts not in evidence during closing argument, and that the evidence does not support the verdict. In a pro se brief, Schlichtmann also contends that the State violated his right to use corporal punishment, to a speedy trial, and to have counsel at arraignment; that the State withheld exculpatory evidence and introduced false evidence and hearsay; that his attorney made an improper closing argument; that the trial court gave erroneous jury instructions; and that the trial court erred in cutting off defense counsel's cross-examination of witnesses. The prosecutor's statements did not likely affect the verdict and the evidence is sufficient to support the verdict. Finding no other error, we affirm.

FACTS
Jessica and Denene Stevens were friends and former sisters-in-law. During September and October, 2000, Jessica and her boyfriend David Schlichtmann were having financial difficulties. Jessica and Schlichtmann, Jessica's son C.H., and Jessica and Schlichtmann's son D.S. moved in with Denene, her husband Altyn, and their children. Jessica's other children, A.H. and D.H., who had lived with them before, stayed with their grandmother, Colleen Mustoe. C.H. had been diagnosed with "A.D.H.D." and "O.D.D." and was taking medication for these disorders. Jessica, Schlichtmann, and the children remained with the Stevens family for about a month.
The Stevens did not smoke or drink, and Schlichtmann did not drink when he first moved into their apartment. But after about two weeks, he began to drink beer, having *903 several almost every day. At first, both Jessica and Schlichtmann disciplined C.H., but as time went on, Schlichtmann took on more of this task and spanked C.H. more, rather than using time-outs, talking to C.H., taking away privileges, or having C.H. stand in the corner. Schlichtmann borrowed a belt from Altyn Stevens in order to spank C.H.
On October 12, Jessica, Schlichtmann, C.H. and D.S. were out running errands. C.H. was very hyperactive, fidgety and aggressive. He had to be corrected several times during the day and was told he would get a spanking when he got home. When they returned to the apartment, Schlichtmann spanked C.H. with the belt. Denene Stevens recalled two or three swats and said Jessica was holding C.H.'s legs while Schlichtmann spanked him and C.H. screamed. Jessica recalled one swat and no screaming, and said she did not hold C.H.'s legs. Altyn and Denene Stevens testified that later, C.H. was kicking the walls and making noise, so Schlichtmann gave him another spanking with the belt. Altyn Stevens recalled four swats with the belt accomplished with an overhand swing. Denene Stevens recalled "a couple" of hard swats with a swing, like banging a hammer.[1] Jessica did not mention any other spanking that night.
Denene testified that she discussed the spanking with her husband that night and that they agreed something needed to be done about the situation. The next day, Jessica and Schlichtmann went out to move their belongings into their new apartment. Denene Stevens was babysitting C.H. She called Mustoe and discussed the situation with her. Mustoe had previously been with the children when A.H. began making a snapping noise and C.H. and D.H. began to cry because Schlichtmann snapped the belt when he spanked them. On another occasion when she took the children home, C.H. began to shake when Schlichtmann came out to the car, refused to get out, and ended up going home with her, crying all the way. On Mustoe's advice, Denene called C.H.'s pediatrician, who suggested that she take C.H. to Mary Bridge Hospital.
Denene and Mustoe took C.H. to the hospital. At the hospital, a social worker talked to them, and C.H. told her that Schlichtmann had hit him with a belt. A doctor examined C.H., finding a quarter-sized old bruise on his abdomen and a new bruise 12 centimeters long and three centimeters wide at the top of his right buttocks. She concluded that the bruise on C.H.'s buttocks was not accidental and was consistent with being hit with a belt. C.H. did not need further treatment, as the bruise would heal by itself. There were no other injuries.
The social worker called the police and made a referral to Child Protective Services. The police took statements from Denene and Mustoe, and placed C.H. in protective custody with Mustoe. The next day, police came to the Stevens' apartment and arrested Schlichtmann. Based on the above information and statements from C.H. and his brother, D.H., that Schlichtmann had hit them with a belt on prior occasions, Schlichtmann was charged in the alternative with one count of second or third degree assault of a child for assaulting C.H. and one count of third degree assault of a child for assaulting D.H.

DISCUSSION
Prosecutorial Misconduct
First, Schlichtmann contends that the prosecutor committed misconduct during closing argument when he referred to facts not in evidence. When a defendant claims prosecutorial misconduct, he bears the burden of establishing the impropriety of the prosecutor's comments as well as their prejudicial effect.[2] To establish prejudice, the defendant must demonstrate that there is a substantial likelihood that the misconduct affected the jury's verdict.[3] A prosecutor's comments are reviewed in the context of the entire argument, the issues in the case, the *904 evidence addressed in the argument, and the instructions given to the jury.[4]
In closing argument, the prosecutor stated:
You can also infer, since Jessica Hamburg agrees that the defendant hit [C.H.] with about the same amount of force, and Joe Scott said [Schlichtmann] hit [C.H.] and [D.H.] with about the same amount of force, that in the past there have also been more than temporary marks or transient pain, that that has been a pattern that [Schlichtmann] has done when he has acted unreasonably in drinking and then swatting.
RP (Mar. 28, 2001) at 12-13.
Schlichtmann is wrong in his assertion that Jessica did not testify that the amount of force in the October 12 spanking was the same as in prior spankings. When asked how hard she and Schlichtmann had spanked the children in the past, Jessica stated "enough to get their attention but not enough to cause harm or damage or hurt."[5] Later, when asked how hard Schlichtmann spanked C.H. on October 12, she stated, "again, like I said earlier, enough to get his attention but not enough to cause him any harm."[6] The prosecutor could argue the inference from this testimony that prior spankings caused pain or injury equivalent to the pain and injury Schlichtmann caused on October 12.
The prosecutor's argument regarding Joe Scott's testimony was inapposite. Scott was not present on October 12, and could not have compared the severity of that spanking with prior incidents. But in the context of the other testimony, this misstatement was harmless. Several witnesses, including C.H. and D.H., testified that Schlichtmann had spanked them with a belt in the past. Jessica's testimony indicated that the severity of the prior spankings was the same as the current one, and both the boys testified that the spankings hurt. The likelihood that the prosecutor's statement regarding Joe Scott's testimony affected the verdict is negligible given the other evidence.
Sufficiency of the Evidence
Schlichtmann contends that the evidence is insufficient to establish that he engaged in a pattern of assault that caused greater than transient pain or minor temporary marks. We will uphold a verdict of guilt if, "after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt."[7] Second degree assault of a child requires that a person over 18 years of age
Intentionally assaults [a] child [under age 13] and causes bodily harm that is greater than transient physical pain or minor temporary marks, and the person has previously engaged in a pattern or practice... of (i) assaulting the child which has resulted in bodily harm that is greater than transient pain or minor temporary marks[.]
RCW 9A.36.130.
In this case, Schlichtmann admits that the evidence adduced at trial proved that he intentionally assaulted C.H. and caused bodily harm that was greater than transient physical pain or minor temporary marks, but asserts that the State failed to prove he had caused the same amount of pain or marks in the past. While there was no direct proof of bruising or other physical injury resulting from past incidents, the testimony of the witnesses established that Schlichtmann had spanked C.H. and D.H. with a belt on prior occasions, that the children were afraid of the belt, that on at least one occasion C.H. began shaking and crying and would not get out of the car when Mustoe returned the children to their apartment but instead went home with her, that these spankings had hurt the boys, and that Schlichtmann had used the same amount of force in the October 12 incident as in prior incidents. These facts are sufficient to support the guilty verdict.
*905 Pro Se Brief
Schlichtmann contends that the State violated his right to discipline his girlfriend's minor children with reasonable and timely punishment in the children's best interests, and to determine the appropriate means and extent of punishment. But the focus must be on the children's welfare, not the parent's liberty to inflict punishment.[8] Where, as here, the punishment was inflicted with a belt with force great enough to cause bruising, it went beyond the bounds of reasonableness and moderation.[9]
Schlichtmann next contends that members of a distinct class or group were systematically excluded from the jury, that his attorney did not provide him with effective representation, that he was denied his right to a speedy trial, that he was denied counsel at arraignment, that his attorney made an improper closing argument, that the instructions were unconstitutional, that the trial court improperly cut off defense counsel's cross-examination of witnesses, that witnesses improperly introduced hearsay, that the State used false testimony, and that the State erred in failing to present Julie Stevens as a witness. He presents no argument or citation to authority in support of these contentions, and we therefore decline to consider them.[10]
Finally, Schlichtmann contends that the State withheld evidence that would have aided his case by failing to present background information on Denene Stevens that would have impeached her credibility and shown her motive to fabricate the story that Schlichtmann assaulted the children in order to help Colleen Musgrove gain custody. But the fact of a prior assault charge and Child Protective Services investigation against Denene Stevens is irrelevant to her alleged motive in helping Colleen Musgrove win custody. The trial court properly considered this argument and ruled that counsel could not question Stevens about the prior incidents.

CONCLUSION
For the reasons stated above, Schlichtmann's conviction is affirmed.
NOTES
[1] Report of Proceedings (RP) (Mar. 21, 2001) at 142.
[2] State v. Russell, 125 Wash.2d 24, 85, 882 P.2d 747 (1994).
[3] State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997).
[4] Brown, 132 Wash.2d at 561, 940 P.2d 546.
[5] RP (Mar. 22, 2001) at 47.
[6] RP (Mar 22, 2001) at 55.
[7] State v. Ortega-Martinez, 124 Wash.2d 702, 708, 881 P.2d 231 (1994).
[8] We note that Schlichtmann is not the parent of C.H. or D.H., but in this opinion and for purposes of this issue only, we deem him to be in the position of a parent because Jessica treated him as such and gave him permission to discipline the children.
[9] State v. Singleton, 41 Wash.App. 721, 723, 705 P.2d 825 (1985).
[10] Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).