# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SEATTLE, | ) | NO. 67816-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| WAYNE EVANS, | ) | |
| | ) | |
| Petitioner. | ) | FILED: June 30, 2014 |

LEACH, J. — On this discretionary review of Wayne Evans's conviction for unlawful use of weapons, we must decide the constitutionality of Seattle Ordinance 12A.14.080 under both article I, section 24 of the Washington State Constitution and the Second Amendment to the United States Constitution. Evans contends that Seattle's prohibition on carrying a fixed-blade knife in public violates his federal and state constitutional right to bear arms. Our state Supreme Court's City of Seattle v. Montana[1] decision, rejecting a similar challenge to the same ordinance under the Washington Constitution, requires rejection of Evans's state constitutional claim. As a matter of first impression, we hold that as applied in this case, Seattle's prohibition on carrying a fixed-blade knife in public did not violate Evans's federal constitutional right to bear arms and affirm his conviction.

---

[1] 129 Wn.2d 583, 919 P.2d 1218 (1996).

FACTS

Seattle Police Officer Michael Conners discovered the knife at issue after a traffic stop. Conners stopped Evans for speeding. The smell of marijuana, coupled with furtive movements by Evans and his passenger, made Conners apprehensive about his own safety. He directed Evans to get out of the vehicle and asked Evans if he had any weapons on him.

Evans told Conners that he had a knife in his front right pants pocket. Conners took from that pocket a fixed-blade kitchen knife in a plastic sheath. Conners arrested Evans for possessing a fixed-blade knife. Evans said that he had been "jumped" before in the same neighborhood and that he carried the knife for protection.

The city of Seattle (City) charged Evans under Seattle Municipal Code (SMC) 12A.14.080, which makes it unlawful to carry a dangerous knife. Evans challenged the constitutionality of this ordinance in light of the United States Supreme Court's decision in District of Columbia v. Heller.[2] The trial court rejected this challenge. A jury convicted Evans as charged. Evans appealed to the superior court, which affirmed his conviction.

Evans petitioned this court for discretionary review. On October 10, 2012, we granted Evans's motion for discretionary review of his conviction "to the extent that he challenges the constitutionality of Seattle Municipal Code 12A.14.080."

---

[2] 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008).

STANDARD OF REVIEW

We review constitutional issues de novo.[3] "This court will presume a legislative enactment constitutional and, if possible, construe an enactment so as to render it constitutional."[4] Because this case does not involve First Amendment freedoms, we determine only if SMC 12A.14.080 is unconstitutional as applied to the facts of this case.[5]

ANALYSIS

Evans claims that SMC 12A.14.080 unconstitutionally infringes upon his right to bear arms under article I, section 24 of the Washington Constitution and the Second Amendment to the United States Constitution. This ordinance makes it unlawful for a person knowingly to "[c]arry concealed or unconcealed on his or her person any dangerous knife, or carry concealed on his or her person any deadly weapon other than a firearm."[6] A "dangerous knife" is "any fixed-blade knife and any other knife having a blade more than three and one-half inches (3 1/2") in length."[7] A "fixed-blade knife" includes "any knife, regardless of blade length, with a blade which is permanently open and does not fold, retract or slide into the handle of the knife, and includes any dagger, sword, bayonet, bolo knife, hatchet, axe, straight-edged razor, or razor blade not in a package, dispenser or shaving appliance."[8]

---

[3] State v. Jorgenson, 179 Wn.2d 145, 150, 312 P.3d 960 (2013) (citing State v. Sieyes, 168 Wn.2d 276, 281, 225 P.3d 995 (2010)).
[4] Jorgenson, 179 Wn.2d at 150 (citing Montana, 129 Wn.2d at 589-90).
[5] State v. Carver, 113 Wn.2d 591, 599, 781 P.2d 1308 (1989) (citing State v. Worrell, 111 Wn.2d 537, 541, 761 P.2d 56 (1988)).
[6] SMC 12A.14.080(B).
[7] SMC 12A.14.010(C).
[8] SMC 12A.14.010(D).

The ordinance includes the following exemptions:

A. A licensed hunter or licensed fisherman actively engaged in hunting and fishing activity including education and travel related thereto; or

B. Any person immediately engaged in an activity related to a lawful occupation which commonly requires the use of such knife, provided such knife is carried unconcealed; provided further that a dangerous knife carried openly in a sheath suspended from the waist of the person is not concealed within the meaning of this subsection;

C. Any person carrying such knife in a secure wrapper or in a tool box while traveling from the place of purchase, from or to a place of repair, or from or to such person's home or place of business, or in moving from one (1) place of abode or business to another, or while in such person's place of abode or fixed place of business.[9]

Article I, section 24 of the Washington Constitution provides, "The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men." The Second Amendment to the United States Constitution states, "A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed."

"Where feasible, we resolve constitutional questions first under our own state constitution before turning to federal law.[10] Evans invites us to apply recent United States Supreme Court Second Amendment jurisprudence to reject the Washington Supreme Court's interpretation of article I, section 24. This invitation ignores our state

---

[9] SMC 12A.14.100.
[10] Jorgenson, 179 Wn.2d at 152.

-4-

Supreme Court's binding determination "that the state and federal rights to bear arms have different contours and mandate separate interpretation."[11]

In Montana, our Supreme Court addressed a similar challenge to SMC 12A.14.080 under article I, section 24. The four justices signing the lead opinion concluded that this ordinance does not violate the state constitution because it is a "reasonable police regulation."[12] Two justices concurred in the result on the basis that the defendants' "ordinary knives" were not "arms" for purposes of article I, section 24 and considered it unwise "to speculate about the boundaries of the 'reasonable regulation' limit on the constitutional right to bear arms in self-defense."[13] Three other justices agreed that the defendants' knives were not arms but believed that the ordinance unreasonably restricted a citizen's state constitutional right to carry arms for self-defense.[14] Montana did not involve a challenge under the Second Amendment.

When a divided court decides a case and no single rationale explaining the result enjoys the assent of a majority, the narrowest ground upon which a majority agreed represents the court's holding.[15] Applying this rule, the narrow decision that the defendants' "ordinary knives" were not "arms" for purposes of article I, section 24, represents Montana's holding. Evans offers no meaningful distinction between his knife and those at issue in Montana. Although the City does not respond to Evans's argument that his knife qualifies as "arms," this failure does not alter the precedential

---

[11] Jorgenson, 179 Wn.2d at 152.
[12] Montana, 129 Wn.2d at 599.
[13] Montana, 129 Wn.2d at 599-600.
[14] Montana, 129 Wn.2d at 600-01.
[15] State v. Valdez, 167 Wn.2d 761, 775, 224 P.3d 751 (2009).

authority of <u>Montana</u>. Therefore, Evans's knife was not "arms" for purposes of article I, section 24 and was not afforded any protected status.

We next turn to Evans's Second Amendment challenge. Primarily, he relies upon <u>Heller</u>, decided after our Supreme Court decided <u>Montana</u>. There, the United States Supreme Court struck down a District of Columbia ordinance prohibiting possession of handguns in the home, declaring that the Second Amendment guarantees "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."[16] This right applies to states through the Fourteenth Amendment to the United States Constitution.[17]

However, the <u>Heller</u> Court qualified its decision, emphasizing that "since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field."[18] The Court also stated,

> [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.[19]

Since the Supreme Court decided <u>Heller</u>, it has not defined the full scope of an individual's Second Amendment right.

---

[16] <u>Heller</u>, 554 U.S. at 635.
[17] <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 130 S. Ct. 3020, 3050, 177 L. Ed. 2d 894 (2010); <u>Sieyes</u>, 168 Wn.2d at 291 (Second Amendment protects an individual right to bear arms from state interference through the due process clause of the Fourteenth Amendment).
[18] <u>Heller</u>, 554 U.S. at 635.
[19] <u>Heller</u>, 554 U.S. at 626-27.

As a result, state courts and lower federal courts have struggled to decide the extent, if any, that Second Amendment rights extend beyond the home.[20] We assume, for purposes of this opinion, that the Second Amendment right to bear arms includes some right to bear arms outside of the home for purposes of self-defense.[21] We also assume that Evans's knife qualifies as "arms" under the Second Amendment.

In Heller, the Supreme Court "declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions."[22] It reasoned, "Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to "keep" and use for protection of one's home and family,' would fail constitutional muster."[23] The Court rejected a "rational

---

[20] The Second, Third, and Fourth Circuits have assumed the Second Amendment has some application outside the home, without deciding the issue. See Drake v. Filko, 724 F.3d 426, 431 (3d Cir. 2013); Kachalsky v. County of Westchester, 701 F.3d 81, 89 (2d Cir. 2012); Woollard v. Gallagher, 712 F.3d 865, 876 (4th Cir. 2013). Those courts concluded, however, that because Heller described the "core" of the right to bear arms as the "right of law-abiding, responsible citizens to use arms in defense of hearth and home," Heller, 554 U.S. at 635, any right of armed self-defense outside the home would be outside the "core" of the Second Amendment. Drake, 724 F.3d at 430-31; Kachalsky, 701 F.3d at 93-94; Woollard, 712 F.3d at 876. The Seventh and Ninth Circuits have disagreed with that analysis. After reviewing the historical record, those courts found that the "core" of the Second Amendment right extends to armed self-defense outside the home. Peruta v. County of San Diego, 742 F.3d 1144, 1166 (9th Cir. 2014); Moore v. Madigan, 702 F.3d 933, 936-37 (7th Cir. 2012). Accordingly, both courts concluded that the firearms regulations at issue were unconstitutional without reference to a level of scrutiny. Peruta, 742 F.3d at 1175-76; Moore, 702 F.3d at 941.

[21] See Peruta, 742 F.3d at 1155 ("[M]any of the same cases that the Heller majority invoked as proof that the Second Amendment secures an individual right may just as easily be cited for the proposition that the right to carry in case of confrontation means nothing if not the general right to carry a common weapon outside the home for self-defense.").

[22] Heller, 554 U.S. at 634.

[23] Heller, 554 U.S. at 628-29 (footnote and citation omitted) (quoting Parker v. District of Columbia, 478 F.3d 370, 400 (D.C. Cir. 2007)).

basis scrutiny" as too low a standard[24] and also rejected an "interest-balancing" approach.[25]

The level of scrutiny (if any) applicable to an arms restriction challenged under the Second Amendment remains unsettled.[26] Evans argues that we should apply strict scrutiny, but he fails to cite any authority establishing this as the appropriate standard. Following Heller, courts have generally applied intermediate scrutiny to evaluate Second Amendment restrictions.[27] We apply intermediate scrutiny to evaluate SMC 12A.14.080 under the Second Amendment.[28]

---

[24] Heller, 554 U.S. at 629 n.27.

[25] Heller, 554 U.S. at 634-35. The court reasoned,
> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.

Heller, 554 U.S. at 634.

[26] Jorgenson, 179 Wn.2d at 159.

[27] See Jorgenson, 179 Wn.2d at 160-61 (applying intermediate scrutiny to uphold statute limiting person's right to possess arms when charged with a serious offense); Drake, 724 F.3d at 436-40 (applying intermediate scrutiny to uphold requirement of "justifiable need" to carry handgun in public); Schrader v. Holder, 704 F.3d 980, 989-91 (D.C. Cir. 2013) (applying intermediate scrutiny to uphold prohibition on person convicted of misdemeanor from possessing a firearm); Woollard, 712 F.3d at 876 (applying intermediate scrutiny to uphold requirement of "good and substantial reason" for a permit to carry, wear, or transport a handgun in public); Heller v. District of Columbia, 670 F.3d 1244, 1256-57, 1261-62 (D.C. Cir. 2011) (applying intermediate scrutiny to statutes requiring registration of firearms and prohibiting assault weapons); United States v. Booker, 644 F.3d 12, 25-26 (1st Cir. 2011) (applying intermediate scrutiny to law prohibiting domestic violence misdemeanor offender from possessing a firearm), cert. denied, 132 S. Ct. 1538 (2012); United States v. Chester, 628 F.3d 673, 683 (4th Cir. 2010) (same); United States v. Skoien, 614 F.3d 638, 641-42 (7th Cir. 2010) (same), cert. denied, 131 S. Ct. 1674 (2011); United States v. Marzzarella, 614 F.3d 85, 99 (3d Cir. 2010) (applying intermediate scrutiny to uphold statute prohibiting possession of handgun with an obliterated serial number), cert. denied, 131 S. Ct. 958 (2011); United States v. Reese, 627 F.3d 792, 802 (10th Cir. 2010) (applying intermediate scrutiny to uphold law prohibiting possession of firearm by person subject to domestic violence protection order), cert. denied, 131 S.

"A law survives intermediate scrutiny if it is substantially related to an important government purpose."[29] Phrased differently, a Seattle ordinance burdening an individual's Second Amendment rights "passes constitutional muster if it is substantially related to the achievement of an important government interest."[30]

Evans contends that SMC 12A.14.080 is unconstitutional even applying intermediate scrutiny because this ordinance has no temporal limitation, Evans carried the knife for self-defense purposes, and Evans was not "untrustworthy." But public safety and crime prevention are compelling government interests.[31] In Montana, the court determined,

> SMC 12A.14.080 furthers a substantial public interest in safety, addressing the threat posed by knife-wielding individuals and those disposed to brawls and quarrels, through reducing the number and availability of fixed-blade knives in public places in Seattle. It addresses the reality of life in our state's largest city, where at all hours residents must step outside their homes and workplaces and mingle with numerous

---

Ct. 2476 (2011); United States v. Miller, 604 F. Supp. 2d 1162, 1171-72 (W.D. Tenn. 2009) (applying intermediate scrutiny and upholding federal felon-in-possession statute); People v. Mitchell, 209 Cal. App. 4th 1364, 1374, 148 Cal. Rptr. 3d 33 (2012) (applying intermediate scrutiny to uphold statute prohibiting carrying concealed dirk or dagger), review denied (Jan. 23, 2013). But see United States v. Engstrum, 609 F. Supp. 2d 1227, 1231-35 (D. Utah 2009) (applying strict scrutiny to law prohibiting domestic violence offenders from possessing firearms).

[28] Jorgenson, 179 Wn.2d at 160-62. Although the court in Jorgenson applied this standard on the basis that the firearm restriction at issue was limited in the scope of affected persons and its duration, we conclude that the ordinance at issue here is a limited restriction applying only to certain types of knives. Thus, intermediate scrutiny is appropriate.

[29] Jorgenson, 179 Wn.2d at 162 (citing Sieyes, 168 Wn.2d at 294 n.18).

[30] Kachalsky, 701 F.3d at 96.

[31] United States v. Salerno, 481 U.S. 739, 748-50, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).

strangers in public places. Unfortunately, street crime involving knives is a daily risk.[32]

Evans relies upon Moore v. Madigan,[33] where the United States Court of Appeals for the Seventh Circuit stated, "Heller repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home, as when it says that the amendment 'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' Confrontations are not limited to the home." The court in Moore struck down an Illinois law that prohibited carrying guns in public, with limited exceptions. The court explained,

> A blanket prohibition on carrying gun[s] in public prevents a person from defending himself anywhere except inside his home . . . . Illinois has lots of options for protecting its people from being shot without having to eliminate all possibility of armed self-defense in public.

> Remarkably, Illinois is the only state that maintains a flat ban on carrying ready-to-use guns outside the home.[34]

Here, SMC 12A.14.080 does not "eliminate all possibility of armed self-defense in public." It does not destroy the right to bear arms in public under the guise of regulating it.[35] This ordinance prohibits carrying a concealed or unconcealed dangerous knife or carrying a concealed deadly weapon. It does not ban all knives, nor does it ban firearms. Therefore, Moore does not support Evans's position.

---

[32] Montana, 129 Wn.2d at 592-93; see also State v. Spencer, 75 Wn. App. 118, 124, 876 P.2d 939 (1994) ("People have a strong interest in being able to use public areas without fearing for their lives.").

[33] 702 F.3d 933, 935-36 (7th Cir. 2012) (alteration in original) (citation omitted) (quoting Heller, 554 U.S. at 592).

[34] Moore, 702 F.3d at 940 (citation omitted).

[35] See Heller, 554 U.S. at 628-29.

Because SMC 12A.14.080 is substantially related to Seattle's important interest in public safety, we hold that it survives intermediate scrutiny. This ordinance limits the availability of fixed-blade knives in public places while including adequate exemptions to limit its effect on innocent conduct.

## CONCLUSION

Because Evans fails to show that prohibiting him from carrying a concealed fixed-blade kitchen knife in public violates his right to bear arms under either article I, section 24 of the Washington State Constitution or the Second Amendment to the United States Constitution, we affirm his conviction.

_Leach, J_

WE CONCUR:

_Spearman, CJ._

_Grosse, J.P.T._