# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) ) | No. 81600-4-I |
| HACH PHETH, | ) ) | ORDER GRANTING MOTION TO PUBLISH |
| Petitioner. | ) ) ) | OPINION |

The respondent State of Washington filed a motion to publish the court's

December 6, 2021 opinion.  The petitioner filed an answer.  The panel has

determined the motion should be granted.  Now, therefore, it is hereby

ORDERED that the motion to publish is granted.

_____
Verellen, J.

_____
Chun, J.

_____
Appelwick, J.

For the current opinion, go to https://www.lexisnexis.com/clientsh/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) ) | No. 81600-4-I |
| HACH PHETH, | ) ) | PUBLISHED OPINION |
| Petitioner. | ) ) ) | |

VERELLEN, J. — In this personal restraint petition, Hach Pheth contends his right to appeal on an adequate record, as well as his rights to equal protection, due process, and effective assistance of counsel require the court to make an audible audio recording during trial including all statements made to and from interpreters. But the English interpretation is the official trial court record, and no courts have routinely required such an audible audio recording of all statements made to and from interpreters.

Pheth also contends that his counsel was ineffective for failing to disclose to the court his alleged inability to understand the interpreters. Because Pheth bases his argument on his own self-serving affidavit and did not obtain his counsel's version of events, the record is inadequate to establish that his counsel's performance was deficient or that it prejudiced his case.

No. 81600-4-I/2

Additionally, Pheth argues that the prosecutor committed misconduct by eliciting a response during direct examination that violated an order in limine. But Pheth fails to establish that the prosecutor intentionally elicited that information. And because the court instructed the jury to disregard the witness's statement, Pheth does not establish how the prosecutor's conduct prejudiced his case.

Pheth further claims that he filed a motion for a postconviction DNA[1] test in accordance with state and local court rules, but that the superior court clerk failed to docket his motion for a hearing. And in its supplemental brief the State took no position on this issue. We conclude a reference hearing is warranted to determine whether Pheth complied with the procedural requirements to obtain a hearing on his motion for a postconviction DNA test.

Otherwise, we deny his petition.

## FACTS

In 2015, Hach Pheth and K.C., both native Cambodian speakers, began a romantic relationship. A year later, Pheth was charged with various counts of assaulting, kidnapping, and raping K.C., all domestic violence offenses, for his conduct during their "on-and-off" romantic relationship.[2]

At the beginning of the court proceedings, the court approved various interpreters for Pheth and K.C. The court engaged in a colloquy with Sarith Tim, a Washington state certified Cambodian interpreter, and Pheth. Pheth

---

[1] Deoxyribonucleic acid.

[2] State v. Hach Pheth, No. 77529-4-I, slip op. at 1 (Wash. Ct. App. Apr. 1, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/775294.pdf.

No. 81600-4-I/3

acknowledged that he could both understand and communicate with Tim. The court also engaged in a colloquy with Vizochanea Morton, another Washington state certified Cambodian interpreter, and Pheth. Again, Pheth acknowledged that he could both understand and communicate with Morton.

During motions in limine, Pheth's counsel moved to "exclude mention of Mr. Pheth having been evicted from one of the addresses."[3] The prosecutor did not object, and the court granted the motion.

At trial, Keo Chetra, a California state certified Cambodian interpreter, interpreted for K.C. During direct examination, the prosecutor asked K.C. why Pheth moved into her home. K.C. responded, "Because at the place where he was renting, they did not want him to live there anymore."[4] Pheth's counsel objected based upon the order in limine. The court sustained the objection and instructed the jury to "disregard the reason why [Pheth] moved."[5]

Sometime during K.C.'s testimony Pheth's counsel requested a recess. During the recess, Chetra disclosed to the prosecutor, Pheth's counsel, and the court that she had mistakenly interpreted the word "confused" as "unconscious."[6] As a result, in the presence of the jury, the court informed the jury of the question the prosecutor asked K.C., K.C.'s response as Chetra originally interpreted it, and Chetra's correction conveying K.C.'s actual response.

---

[3] Report of Proceedings (RP) (Aug. 8, 2017) at 105.

[4] RP (Aug. 15, 2017) at 674.

[5] Id.

[6] Id. at 700-01.

3

No. 81600-4-I/4

On August 23, 2017, the jury found Pheth guilty of second degree assault and first degree rape with domestic violence findings on both crimes. That October, at sentencing, Pheth exercised his right to allocution and Tim interpreted. The court sentenced Pheth to the high end of the standard range.

Pheth filed a motion for a postconviction DNA test twice with the superior court clerk. The superior court clerk sent a letter to Pheth each time declining to docket the motion for Pheth's failure to serve the judge with a copy of the motion. Pheth responded that he properly served the judge.

This court affirmed Pheth's convictions on direct appeal. Pheth filed this personal restraint petition.

## ANALYSIS

The primary issue in this personal restraint petition revolves around Pheth's claims that the interpreters at trial were "incompetent" and "hostile" toward him, which resulted in inaccuracies that impaired his ability to understand the court proceedings, to assist his counsel, and ultimately to receive a fair trial.[7]

"To obtain relief on collateral review based on a constitutional error, the petitioner must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the error."[8] But "[b]are allegations

---

[7] Supp. Br. of Petitioner at 2-11.

[8] In re Pers. Restraint of Wilson, 169 Wn. App. 379, 386-87, 279 P.3d 990 (2012) (citing In re Pers. Restraint of Hubert, 138 Wn. App. 924, 928, 158 P.3d 1282 (2007)).

4

No. 81600-4-I/5

unsupported by citation of authority, references to the record, or persuasive reasoning cannot sustain this burden [of] proof."[9]

I. Interpretation

Pheth urges this court to broadly "conclude that when language interpreters are necessary to conduct a criminal trial, the accused has a due process right to an adequate record of the interpretation conducted at trial and sentencing so that it can be evaluated for accuracy and significant errors."[10]

The precise issue being raised here is whether equal protection, due process, effective assistance of counsel, and the right to appeal required the court to make an audible audio recording during trial of all statements made to and from the interpreters in English and Cambodian, so that any erroneous interpretation could be documented. "We review constitutional issues de novo."[11]

In Washington "the right of a defendant in a criminal case to have an interpreter is based upon the Sixth Amendment constitutional right to confront witnesses and 'the right inherent in a fair trial to be present at one's own trial.'"[12] A

---

[9] State v. Brune, 45 Wn. App. 354, 363, 725 P.2d 454 (1986) (citing In re Hagler, 97 Wn.2d 818, 650 P.2d 1103 (1982)).

[10] Supp. Br. of Petitioner at 6.

[11] City of Seattle v. Evans, 182 Wn. App. 188, 191, 327 P.3d 1303 (2014), aff'd on other grounds, 184 Wn.2d 856, 366 P.3d 906 (2015).

[12] State v. Ramirez-Dominguez, 140 Wn. App. 233, 243, 165 P.3d 391 (2007) (quoting State v. Gonzales-Morales, 138 Wn.2d 374, 379, 979 P.2d 826 (1999)).

No. 81600-4-I/6

criminal defendant has a constitutional right to a "competent" interpreter.[13] And

the standard for competence "'should relate to whether the rights of non-English

speakers are protected, rather than whether the interpreting is or is not

egregiously poor.'"[14] As "'long as the defendant's ability to understand the

proceedings and communicate with counsel is unimpaired, the appropriate use of

interpreters in the court room is a matter within the discretion of the [trial] court.'"[15]

In support of his argument, Pheth provides citations to cases addressing

the inadequacy of reconstructed records.[16] But this is not a question of a

reconstructed record. Rather, the issue Pheth raises depends on information that

was not part of the record on his direct appeal.[17] Pheth has the burden of

---

[13] Id. at 243-44 (citing State v. Pham, 75 Wn. App. 626, 633, 879 P.2d 321 (1994)).

[14] Id. at 244 (quoting State v. Teshome, 122 Wn. App. 705, 712, 94 P.3d 1004 (2004)).

[15] Id. at 243 (alteration in original) (citing Gonzales–Morales, 138 Wn.2d at 382).

[16] For example, Pheth cites to State v. Tilton, 149 Wn.2d 775, 781, 72 P.3d 735 (2003) ("A criminal defendant is constitutionally entitled to a record of sufficient completeness to permit effective appellate review of his claims."), and State v. Halverson, 176 Wn. App. 972, 979, 309 P.3d 795 (2013) ("When reviewing whether the record is sufficient to allow review, we consider the following factors: '(1) whether all or only part of the trial court record is missing or reconstructed; (2) the importance of the missing portion to review the issues raised on appeal; (3) the adequacy of the reconstructed record to permit appellate review; and (4) the degree of resultant prejudice from the missing or reconstructed record, if any, to the defendant.'") (quoting State v. Classen, 43 Wn. App. 45, 57, 176 P.3d 582 (2008)).

[17] See State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

No. 81600-4-I/7

establishing a record to support his claims of error and prejudice.[18] He contends that without the audible audio recording of every statement to and from his interpreters in English and Cambodian, he is precluded from meeting his burden.

Here, the law and the facts are especially unfavorable to his theory. The English interpretation is the trial court record.[19] No statutes or case law support his view that an audible audio recording of court proceedings including all statements made to and from interpreters in English and Cambodian is routinely required.

At trial, the court appointed two interpreters, Tim and Morton, to assist Pheth in understanding the proceedings. First the court engaged in a colloquy with Tim, a state certified Cambodian interpreter, and Pheth to ensure that Pheth could understand and communicate with him. The court also engaged in a

---

[18] See In re Wilson, 169 Wn. App. at 386-87; Matter of Pers. Restraint of Lord, 123 Wn.2d 296, 303, 868 P.2d 835 (1994), decision clarified sub nom. In re Pers. Restraint Petition of Lord, 123 Wn.2d 737, 870 P.2d 964 (1994).

[19] John R. Bowles, Court Interpreters in Alabama State Courts: Present Perils, Practices, and Possibilities, 31 AM. J. TRIAL ADVOC. 619, 645 (2008) (noting that "[c]ourt records of trial proceedings are generally kept only in English"); Debra L. Hovland, Errors in Interpretation: Why Plain Error Is Not Plain, 11 LAW & INEQ. 473, 487, 493 (1993) ("Usually, determination of error is not possible (without translation of the transcript) because the trial transcript is completely in English." "[Because] the trial transcript is in English, [ ] errors in interpretation will not be manifest unless a party has repeatedly complained about the inaccuracy of the interpretation."); Marina Hsieh, "Language-Qualifying Juries" to Exclude Bilingual Speakers, 66 BROOK. L. REV. 1181, 1185 (2001) ("Just as the court reporter's transcript is the official record of the words spoken in court, not the actual words themselves, the court interpreter's English version of the testimony is the basis of the reporter's transcript, not the original non-English testimony. Thus, for official purposes, the original testimony ultimately has zero presence in the record, being entirely supplanted by the English interpretation.").

7

No. 81600-4-I/8

colloquy with Morton, another state certified Cambodian interpreter, and Pheth to ensure that Pheth could understand and communicate with him. Pheth confirmed to the court that he could understand and communicate with both Tim and Morton. During these colloquies, the court also told Pheth "that if there's any point in the proceedings where you are concerned that you are not understanding an interpreter that you let your lawyer know so that she can notify the court."[20] Pheth responded, "Yes, Your Honor."[21] Pheth never expressed to the court an inability to understand or communicate with Tim or Morton.

In making his arguments, Pheth cites to various articles advocating for a complete audible audio recording of court proceedings including all statements made to and from interpreters, but no courts have routinely required such a recording. His remaining arguments are not persuasive.

First, Pheth contends that Tim and Morton were "hostile" toward him given the nature of his charges and "habitually spoke simultaneously, often interrupting each other and rendering large portions of testimony totally indecipherable."[22] But the substance of the interpreters' statements is not necessarily needed for the court to visually discern if Tim and Morton were speaking at the same time.[23] And

---

[20] RP (Aug. 8, 2017) at 66.

[21] Id.

[22] Personal Restraint Petition (PRP) at 6-7.

[23] Simultaneous interpretation is used in most court proceedings. During simultaneous interpretation, the interpreter(s) is either seated "next to the defendant" or "wearing a head set" and located somewhere in the courtroom. Heather Pantoga, Injustice in Any Language: The Need for Improved Standards Governing Courtroom Interpretation in Wisconsin, 82 Marq. L. Rev. 601, 647

8

the only citation to the record Pheth provides in support of this claim is his own self-serving affidavit.[24] Pheth's "bare allegations" are insufficient to establish that he was "actually" and "substantially" prejudiced by his recollection of the interpretation at trial.[25]

Second, Pheth argues that at sentencing his allocution to the court was misinterpreted. The record provides that Pheth stated: "I have a couple words to say. I have an elderly dad at home. I have three children. I understand what I have done. I hope that the judge will give me some leniency. I want to change my life, start all over. Thank you."[26] But in his own self-serving affidavit, Pheth claims he actually said:

> I have a couple words to say. I have an elderly dad at home. I have three children and don't know when I'm going to see them again. My entire life I have picked the wrong women. I did not do this and I regret dating her. I hope the judge will give me some leniency. I want to change my life. Start all over without her in my life.[27]

---

(1999). The result of this mode of interpretation is increased "fatigue" on behalf of the interpreter, which is why the court often approves multiple interpreters to interpret the proceedings. Id.

[24] PRP at 45-47.

[25] The State in its supplemental brief provides citations to cases from other jurisdictions that have rejected the argument that "a complete and accurate transcript of the [trial court] proceeding in English [is] an insufficient trial record." Resp't's Supp. Br. at 15. But because Pheth fails to satisfy his burden of establishing "actual" and "substantial" prejudice, we need not turn to the cases from other jurisdictions.

[26] RP (Oct. 16, 2017) at 1249-50.

[27] PRP at 28, 46.

No. 81600-4-I/10

In support of Pheth's assertion, his counsel on this personal restraint petition submitted a declaration stating that in general the audio recordings from the court proceedings were inadequate to document precisely what the interpreters were saying in Cambodian "because of the low volume at which it was spoken."[28] But Pheth's allocution in open court in Cambodian was translated into English. And Pheth and his counsel fail to establish that the available audible audio recording of Pheth's allocution in Cambodian could not have been reviewed by a third party interpreter to determine if any misinterpretation occurred.

Finally, in a related argument, Pheth contends that K.C.'s interpreter Chetra "lacked focus and was admonished by the court for failing to participate in the proceedings[,] gave wildly inaccurate and misleading answers in English, repeatedly failed to understand the questions posed to him in English, and repeatedly gave nonsensical and nonresponsive answers."[29] In support of this contention, Pheth argues that the "most inherently prejudicial" interpretation error occurred during Chetra's interpretation of K.C.'s testimony.[30]

Specifically, on direct examination of K.C., the prosecutor asked K.C. if Pheth hit her with any other object besides "nunchucks." K.C. responded that

---

[28] Supp. Br. of Petitioner, App. at 2.

[29] PRP at 2-3.

[30] Id. at 3.

10

she did not remember because she was "confused."[31]  But Chetra interpreted

the word "confused" as "unconscious."[32]  Chetra admitted the error to the

prosecutor, Pheth's counsel, and the court.  Chetra stated, "I approached the

prosecutor because I used the word "unconscious" when [K.C.] used the

[word] (says Cambodian word), and I couldn't find an equivalency for the

[word] (says Cambodian word) at that moment, so my interpretation was

"unconscious," and it [should have been] "confused" instead of "unconscious,"

Your Honor."[33]  As a result, the court informed the jury of the question the

prosecutor asked K.C., K.C.'s response as it was originally interpreted by

Chetra that K.C. was "unconscious," and Chetra's correction that K.C.'s actual

testimony was that she was "confused."[34]  This single incident seems to

illustrate the care of Chetra to make a correction rather than reveal

incompetence or hostility toward Pheth.

The existing standards do not require an audible audio recording of all

statements made to and from interpreters and the facts here do not establish

prejudicial incompetence or misconduct by the interpreters as Pheth alleges.

II.  Ineffective Assistance of Counsel

Pheth contends that he was denied effective assistance of counsel because

his counsel's "threat to withdraw prevented him [from] testifying on his own behalf

---

[31] RP (Aug. 15, 2017) at 701.

[32] Id. at 700-01.

[33] Id.

[34] Id. at 703.

due to involuntary waiver and interpreter incompetence" which in turn resulted in his inability "to adequately understand the proceedings against him" and actively participate in those proceedings.[35] We review ineffective assistance of counsel claims de novo.[36]

To demonstrate ineffective assistance of counsel the defendant bears the burden of establishing that his counsel's performance was deficient and that the deficient performance prejudiced his case.[37] Performance is deficient if it falls below the objective standard of reasonableness.[38] "'Prejudice is established when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different.'"[39] And "'[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting efforts of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"[40]

---

[35] PRP at 12.

[36] Matter of Pers. Restraint of Davis, 188 Wn.2d 356, 371, 395 P.3d 998 (2017).

[37] In re Pers. Restraint of Khan, 184 Wn.2d 679, 688, 363 P.3d 577 (2015) (quoting State v. A.N.J., 168 Wn.2d 91, 109, 225 P.3d 956 (2010)).

[38] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 688,104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[39] Khan, 184 Wn.2d at 688 (internal quotation marks omitted) (quoting In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001)).

[40] Grier, 171 Wn.2d at 34 (quoting Strickland, 466 U.S. at 689); In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004) ("'The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.'") (quoting Kimmelman v.

Here, Pheth claims that he told his counsel that he had concerns about his ability to understand the interpreters but that his counsel "threatened to withdraw if [he] told the judge or caused delay in the trial."[41]  But the only evidence Pheth provides in support of his argument is his own self-serving affidavit which is limited to his own recollection of the conversations he had with his counsel.[42]  The record does not establish that Pheth ever pursued any efforts to obtain his trial counsel's version of such events.[43]

Especially where Pheth had an opportunity to tell the court about his concerns with the interpreters and did not do so, and where it is only in his own

Morrison, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)); see also Matter of Pers. Restraint of Hopper, 4 Wn. App. 2d 838, 844, 424 P.3d 228 (2018).

[41] PRP at 46.

[42] See In re Pers. Restraint of Gomez, 180 Wn.2d 337, 353, 325 P.3d 142 (2014) (in finding the defendant's ineffective assistance of counsel claim unsuccessful, the trial court noted that "[p]rior to [the defendant's] personal restraint petition, [the defendant] never informed anyone of any ongoing problems communicating with her attorney.  Despite being in court on numerous occasions during the three years pending trial, during which she was assisted by a court certified interpreter, she cannot point to a single instance where she complained about an inability to meaningfully communicate with [her attorney].  The defendant neither raised this issue during her trial nor on [direct] appeal.").

[43] At oral argument before this court, Pheth's attorney stated, "To be candid with the court, I contacted [his trial] attorney and was told that a response could not be provided."  Wash. Court of Appeals oral argument, Personal Restraint Petition of Hach Pheth, No. 81600-4 (Oct. 27, 2021), at 18 min., 09 sec. through 18 min., 17 sec., https://www.tvw.org/watch/?clientID=9375922947&eventID=2021 101136&autoStartStream=true.  But that limited information does not clearly establish that Pheth's trial counsel actually threatened to withdraw if Pheth expressed his concerns to the trial court regarding his inability to understand the interpreters or that she refused to relay his concerns about the interpreters to the trial court.  A bare allegation at oral argument is insufficient to establish that Pheth was "actually" and "substantially" prejudiced by his trial counsel's alleged conduct.

No. 81600-4-I/14

self-serving affidavit that he alleges he complained to counsel about the interpreters, we are not compelled to accept Pheth's contention that he raised this issue during trial, but was thwarted by his counsel. And he did not raise this issue on direct appeal. Pheth does not establish that he was "actually" and "substantially" prejudiced by his counsel's alleged conduct.

III. Prosecutorial Misconduct

Pheth argues that the prosecutor committed misconduct "by eliciting irrelevant and inflammatory testimony that violated motions in limine and denied petitioner his right to a fair trial."[44] We review a claim of prosecutorial misconduct for an abuse of discretion.[45] We "must consider the comments in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury."[46]

A defendant claiming prosecutorial misconduct bears the burden of establishing "the impropriety of the prosecutor's comments as well as their prejudicial effect."[47] "To establish prejudice, the defendant must demonstrate that there is a substantial likelihood that the misconduct affected the jury's verdict."[48] "In determining whether prosecutorial misconduct has occurred, we first look at

---

[44] PRP at 22.

[45] State v. Ramos, 164 Wn. App. 327, 333, 263 P.3d 1268 (2011).

[46] State v. Edvalds, 157 Wn. App. 517, 521, 237 P.3d 368 (2010) (citing State v. Brown, 132 Wn.2d 529, 561, 755 P.2d 174 (1988)).

[47] State v. Schlichtmann, 114 Wn. App. 162, 166-67, 58 P.3d 901 (2002) (citing State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)).

[48] Id. (citing Brown, 132 Wn.2d at 561).

whether the defendant objected to the alleged misconduct."[49] "If the defendant objected, we evaluate (1) whether the prosecutor's comments were improper and (2) whether a substantial likelihood exists that the improper statements affected the jury's verdict."[50]

Here, during motions in limine, Pheth's counsel moved to exclude any reference to his prior eviction. The prosecutor did not object, and the trial court granted the motion. But on direct examination, the prosecutor engaged in the following exchange with K.C.:

Q: Why did [Pheth] move into your home?

A: Because at the place where he was renting, they did not want him to live there anymore.

Q: So he moved in with you?

DEFENSE COUNSEL: Object. Motions in limine and move to strike. And hearsay.

COURT: Sustained. The jury will disregard the reason why he moved.[51]

And the trial court later revisited the objection and noted that the initial "ruling was appropriate and stands."[52]

Even though, on direct examination of K.C., the prosecutor asked K.C. why Pheth moved into her home, Pheth does not establish that the prosecutor

---

[49] State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (citing State v. Gentry, 125 Wn.2d 570, 640, 888 P.2d 1105 (1995)).

[50] Id. (citing Gentry, 125 Wn.2d at 640).

[51] RP (Aug. 15, 2017) at 674.

[52] Id. at 683.

intentionally elicited that information in violation of the order in limine. And

even assuming that the prosecutor did commit misconduct by intentionally

eliciting information of his eviction, Pheth fails to establish a substantial

likelihood that the prosecutor's misconduct affected the jury's verdict,

especially because the court sustained the objection and instructed the jury to

disregard the testimony. Pheth fails to establish that he was "actually" and

"substantially" prejudiced by the prosecutor's conduct.

IV. Postconviction DNA Testing

Pheth contends that he submitted a motion requesting a postconviction

DNA test twice to the superior court clerk and that the superior court clerk

committed malice and misfeasance in failing to docket the motion. We review a

trial court's decision on a motion for a postconviction DNA test for an abuse of

discretion.[53] A court abuses its discretion if its decision is based on untenable

grounds or untenable reasons.[54]

A motion for a postconviction DNA test "must state the basis for the

request, explain the relevance of the DNA evidence sought, and comply with

applicable court rules."[55] Pursuant to state and local court rules, a superior court

clerk must docket a motion for a postconviction DNA test if the defendant files a

---

[53] State v. Crumpton, 181 Wn.2d 252, 257, 332 P.3d 448 (2014) (citing State v. Riofta, 166 Wn.2d 358, 370, 209 P.3d 467 (2009)).

[54] Id. (citing State v. Rafay, 167 Wn.2d 644, 655, 222 P.3d 86 (2009)).

[55] Riofta, 166 Wn.2d at 364 (citing RCW 10.73.170(2)(a)-(c)).

No. 81600-4-I/17

copy of the motion with the superior court clerk, the superior court judge, and the opposing party.[56]

Here, on December 2, 2019, the superior court clerk sent a letter to Pheth stating that his motion for a postconviction DNA test was filed but would not be considered because he failed to send a copy directly to the superior court judge. On March 1, 2020, Pheth sent a letter to the superior court clerk stating that he already sent a copy of his motion directly to the superior court judge and attached a copy of his proof of service. Later that month, Pheth again sent his motion for a postconviction DNA test to the superior court clerk, the superior court judge, and the prosecutor. But on March 27, Pheth received another letter from the superior court clerk stating that his motion would not be considered because he failed to send a copy directly to the superior court judge. And the State initially opposed this issue but in its supplemental brief expressly took no position. A reference hearing is warranted to determine whether Pheth complied with the procedural requirements on his motion for a postconviction DNA test and, if he did comply, then to decide the merits of his motion.

V.  Cumulative Error

Pheth argues that he "should be granted a new trial because the cumulative impact of numerous trial [and] structural errors denied him a fair trial with reliable results."[57]  "Under the cumulative error doctrine, a defendant may be entitled to a

---

[56] King County Court Criminal Dep't Manual at 33-34, (Section 15); LCR (7)(b)(4); CrR 8.2.

[57] PRP at 36.

No. 81600-4-I/18

new trial when cumulative errors produce a trial that is fundamentally unfair."[58]  But because multiple errors did not occur, Pheth is not entitled to relief under the cumulative error doctrine.

Therefore, we remand for a reference hearing to determine whether Pheth complied with the procedural requirements to obtain a hearing on his motion for a postconviction DNA test.  Consistent with RAP 16.12, if the procedural requirements were satisfied, the trial court should also address the merits of his motion for a postconviction DNA test.[59]

Otherwise, we deny his petition.

_____

WE CONCUR:

_____          _____

---

[58] State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012) (citing Lord, 123 Wn.2d at 332).

[59] "If the petitioner satisfies these procedural requirements, the court must grant the motion if it concludes the petitioner has shown the 'likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis.'" Riofta, 166 Wn.2d at 364 (quoting RCW 10.73.170(3)).

18